## BROWN *v.* STATE

[No. 219, September Term, 1958.]

*Decided  May  8, 1959.*

The cause was argued before BRUNE, C. J., and HENDERSON, HAMMOND, PRESCOTT and HORNEY, JJ.

*Richard M. Pollitt*, with whom was *Vaughn E. Richardson* on the brief, for appellant.

*Clayton A. Dietrich, Assistant Attorney General*, with whom were *C. Ferdinand Sybert, Attorney General, Hamilton P. Fox, Jr., State's Attorney for Wicomico County*, and *C. Burnam Mace, State's Attorney for Dorchester County*, on the brief, for appellee.

HAMMOND, J., delivered the opinion of the Court.

Johnnie Brown, a Negro, appeals from a judgment and sentence of death following a jury's verdict that he was guilty of murder in the first degree for shooting a policeman as he was being taken to the station house. It is contended that the trial court erred in refusing to examine the jurors on their *voir dire* as to possible prejudice against Negroes, that it was error to admit evidence tending to prove prior crimes, that the jury should have been instructed that there was no evidence as a matter of law of murder in the first degree, and, finally, that two questions asked appellant by the trial court were improper and prejudicial.

Johnnie Brown, who apparently had never before been in trouble with the law, uttered two checks he had forged on September 5, 1958, in Salisbury. The next day he attempted to utter another check he had forged. A description was furnished immediately by the storekeeper who had refused to cash the proffered check, and in the evening of that day an officer of the Salisbury police force arrested Brown. It was stipulated that the arrest and custody were lawful. The police officer did not handcuff appellant or put him under any form of physical restraint. The two walked together towards the police station several blocks away. To get to

the station it was necessary to pass through a dark alley about ten feet wide. As the officer was preceding the appellant up the alley, he was shot by a bullet from appellant's pistol. The bullet entered his back at about the level of his third rib and came out the front of his neck. The officer staggered into police headquarters, where he died shortly thereafter, and the appellant ran out of the alley and down the street and was soon taken into custody by another policeman as he lay hiding in some bushes. No one saw the shooting and there was no testimony, except that of Brown, as to how it occurred.

Brown's story was that he wished to discard his pistol, which he had put in his pocket as he was leaving his room that evening, because he suspected that he had been picked up for forgery and thought it wise to get rid of the pistol, and that he reached with his left hand into his right coat pocket in an attempt to ease the gun to the alley, and the shot followed by mistake or accident. Several witnesses saw the appellant running from the alley with the gun in his right hand. A ballistics expert testified that a bullet and shell, which were picked up by a patrolman in the alley at the place of the shooting, came from appellant's gun, that it took a five or six-pound pull on the trigger of the gun to discharge it, and that it could not have been discharged accidentally, by jolt or otherwise, only by pulling the trigger.

The case had moved to Dorchester County for trial, and counsel for appellant, who had been appointed by the court, submitted to the court a list of fourteen questions to be asked prospective jurors. The court asked six of the questions and refused to ask the other eight. Three of those not asked were whether the jurors had read or heard any accounts of the case in the newspapers or on the radio or television, and whether they had discussed the guilt or innocence of the accused. Another question not asked was whether the jurors were associated with or related to the attorneys in the case, either for the State or for the defense. The remaining unasked questions were directed towards ascertaining whether the jurors had any prejudice against a Negro which would prevent them from giving a Negro as fair and impartial a trial

as they would a white man. Question ten, for example, was: "Can you, without bias or prejudice, pass your verdict in this case solely on the evidence produced from the witness stand without regard to the race, creed or color of the Defendant?"

As we reiterated in *McGee v. State,* 219 Md. 53, 58: "It is settled in Maryland that in examination of jurors on their *voir dire,* the court may frame its own questions and not permit cross-examination by counsel, that the extent of the examination rests in the sound discretion of the court, and that the purpose of the inquiry is to ascertain 'the existence of cause for disqualification and for no other purpose.' *Adams v. State,* 200 Md. 133, 140, and cases cited; *Bryant v. State,* 207 Md. 565." We see no abuse of discretion or prejudice to the accused in the refusal to ask the questions as to reading or hearing accounts of the case, or discussing it. All the jurors had already said that they had not formed or expressed any opinion as to the guilt or innocence of the accused, and the fact that a prospective juror has read or heard accounts concerning the accused or the crime does not of itself disqualify him or raise any presumption of prejudice. *Bryant v. State,* 207 Md. 565, 577-579; *Piracci v. State,* 207 Md. 499, 511-512; *Grammer v. State,* 203 Md. 200, 209.

The question as to the connection of any juror with the attorneys of the case did not have to be asked, as was held in *McGee v. State, Bryant v. State,* both *supra;* and *Emery v. F. P. Asher, Jr., & Sons, Inc.,* 196 Md. 1, 6.

The refusal to ask any questions as to the bias or prejudice which jurors might have as to a Negro, and as to whether the jury could give the defendant as fair and impartial a trial as they could a white man, falls into a different category, requiring more consideration. Although some courts have found no error in refusal to question prospective jurymen as to such prejudice, the majority, and we think the far better reasoned, of the cases, holds to the contrary. One of the more recent cases on the subject, which expresses well the views we think sound, is *State v. Higgs* (Conn.), 120 A. 2d 152. There, on *voir dire* examination, the Negro defendant was not permitted to ask questions designed to uncover prejudice against the Negro race to such an extent that it would take less evi-

dence to convince that a Negro was guilty of the crime charged than to convince that a white person had committed a similar crime. The Supreme Court of Errors held that there was an abuse of discretion in excluding from the examination on the *voir dire* all questions as to race prejudice. The Court said:

> "Clearly, therefore, if there is any likelihood that some prejudice is in the juror's mind which will even subconsciously affect his decision of the case, the party who may be adversely affected should be permitted questions designed to uncover that prejudice. This is particularly true with reference to the defendant in a criminal case. Otherwise, the right of trial by an impartial jury guaranteed to him . . . might well be impaired. . . .
>
> "In line with this thought, it is almost uniformly held in other jurisdictions that it is reversible error in a criminal case in which a Negro is the defendant to exclude questions, propounded by him on the voir dire, designed to bring out that a prospective juror is so prejudiced against the Negro race that it would take less evidence to convince him that a Negro was guilty of the crime charged than to convince him that a white person had committed a similar crime. . . .
>
> "We cannot be blind to the fact that there may still be some who are biased against the Negro race and would be more easily convinced of a Negro's guilt of the crime of rape than they would of a white man's guilt. . . .
>
> "So long as race prejudice exists, even in a relatively few persons, there is a substantial chance that one of those few will appear in court as a venireman. Consequently, the fact that most people in the state are not prejudiced against Negroes is not of controlling importance."

The Supreme Court reached the same conclusion in *Aldridge v. United States*, 283 U. S. 308, 75 L. Ed. 1054. There the Court said that the question was not as to the dominant senti-

ment of the community and the general absence of disqualifying prejudice, but as to the bias of the particular jurors who were to try the accused, and continued:

> "If in fact, sharing the general sentiment, they were found to be impartial, no harm would be done in permitting the question; but if any one of them was shown to entertain a prejudice which would preclude his rendering a fair verdict, a gross injustice would be perpetrated in allowing him to sit. * * * we do not think that it can be said that the possibility of such prejudice is so remote as to justify the risk in forbidding the inquiry. And this risk becomes most grave when the issue is of life or death."

See also *Pinder v. State* (Fla.), 8 So. 837; *Hill v. State* (Miss.), 72 So. 1003; *State v. McAfee,* 64 N. C. 339; and annotations in 54 A.L.R. 2d 1204. In *Lee v. State,* 164 Md. 550, 556, there was at least an implication that the accused would have been entitled to have asked the questions that the appellant here requested. See also *Casey v. Roman Catholic Archbishop,* 217 Md. 595, 605.

The court below asked no question whatever as to bias or prejudice, even in the broadest terms. Unless bias is inquired into beforehand, its existence ordinarily will not become known since the verdict cannot be impeached. We hold that the failure to elicit from the jurors the essence of the information sought by the appellant was reversible error.

We pass to the other questions presented. Brown concedes that it was not error for the State to offer evidence which revealed the fact that he had attempted to utter a forged check on the day of the shooting, and we find no error in the admission of evidence as to the uttering accomplished on the day before. As we said in *Ward v. State,* 219 Md. 559, the question is always one of relevance and, under ordinary circumstances, evidence that an accused has done other acts which constitute a crime has no relevance towards showing that he is guilty of the crime for which he is being tried. On the other hand, if "the evidence of another offense has

a natural tendency to establish, or offers a reasonable presumption or inference as to a principal fact at issue or matter in dispute, it should be admitted even though it discloses other offenses." One of the instances in which evidence has a natural tendency to establish or to permit an inference as to a principal fact at issue is where it tends to show motive or intent. *Purviance v. State,* 185 Md. 189, 196; *King v. State,* 190 Md. 361, 372. It is not infrequently held that where a killing occurs in an attempt to avoid arrest or to escape after having been arrested, evidence that the accused recently had committed one or more crimes is admissible as showing the reason for the killing. *Wood v. State,* 191 Md. 658, 663-665; *Perrera v. State,* 184 Md. 51, 56; *Bryant v. State, supra,* 207 Md. 565, 586; 1 Underhill, *Criminal Evidence,* (5th Ed.), Sec. 209; 1 Wharton, *Criminal Evidence,* (12th Ed.), Sec. 237, p. 524; *State v. Walters* (Ore.), 209 P. 349; *Suhay v. United States,* 95 F. 2d 890 (10th Cir.); *State v. Simborski* (Conn.), 182 A. 221; *Herde v. State* (Wis.), 295 N. W. 684; *People v. Matheson* (Ill.), 26 N. E. 2d 465.

In the case before us, Brown said himself that he attempted to throw away his pistol because of the belief that he had been picked up for forgery. He realized that he had successfully uttered a forged check the day before—a more serious offense than the attempt to utter for which he was immediately apprehended—and the urge to escape in all probability was stronger because of the commission of the more serious crime. These facts were relevant on the question of the real reason for Brown having a gun in his possession at the time of his arrest and on the true purpose of the shooting after he was arrested.

The trial court properly refused to direct a verdict that there was no evidence sufficient to support a finding of murder in the first degree. The testimony permitted a finding as to all of the elements of that crime, that is, wilfulness, deliberation, and premeditation on the part of the accused. There was testimony permitting a finding that Brown left his room on the day of the shooting intending to commit a crime or crimes with a pistol in his pocket, that after his arrest he did not shoot until he was in a dark alley with the policeman in front of him,

that the bullet travelled upward and inward, that the gun could not be discharged accidentally, by jolt or otherwise, that it could be fired only by pulling the trigger, that the force required was a five or six-pound pull, that Brown held the gun in his right hand as he left the alley in the position he would have held it if he had just shot it or if he were going to shoot it. The jury, as it did, was free to disbelieve Brown's story that he attempted to remove the gun from the right side of his coat with his left hand, and that it must have gone off accidentally, and to accept the State's version. Brown concedes that if the State's version were believed, there was enough to show wilful and deliberate killing, that is, murder in the second degree, but argues that there was not enough to show the premeditation requisite for murder in the first degree. In *Chisley v. State,* 202 Md. 87, 107, we adopted the statement that, to establish premeditation, ". . . 'Such design must have preceded the killing by some appreciable length of time. But the time need not be long. It must be sufficient for some reflection and consideration upon the matter, for choice to kill or not to kill, and for the formation of a definite purpose to kill. And when the time is sufficient for this, it matters not how brief it is.' " See also *Elliott v. State,* 215 Md. 152; *Faulcon v. State,* 211 Md. 249; *Kier v. State,* 216 Md. 513. In *People v. Morse* (N. Y.), 89 N. E. 816, 817, the court said that where a person has committed a crime "* * * and then uses a revolver carried by him with fatal effect in his effort to avoid arrest, it presents a question for the determination of a jury whether the person so killed was not killed by the deliberate and premeditated intention of the one firing the shot." See also *People v. Brengard* (N. Y.), 191 N. E. 850. In *State v. Simborski, supra,* the Supreme Court of Errors of Connecticut pointed out that the accused, who had committed three crimes, saw the police approaching and, instead of stopping as ordered, ran into an alleyway, took out a revolver and shot a policeman. The court said at page 224 of 182 A.: "The inference is permissible, if not unavoidable, that he carried the revolver with the purpose of shooting and killing if necessary to prevent his capture, and this he actually did.

The trial court could reasonably find a deliberate and premeditated design to effect the death of any person who should attempt to prevent his escape. * * * Assuming that the accused did not decide to shoot until he stopped in the back yard and Koella appeared around the corner of the house, there was still time for him to deliberate after he had stopped and while he was removing his revolver from the holster."

In the case before us the same inferences could be drawn from the carrying of the revolver by Brown, and the ample time he had to deliberate as he was being walked to the police station and as he was taking the revolver from his pocket.

At the conclusion of the cross-examination of Brown, Judge Taylor asked him six or seven questions. Two of those were such as to indicate sarcastically, so that the jury could not have failed to understand, that the judge did not believe the story that Brown was telling as to why he was carrying the pistol. There was an objection to the questions, which was overruled. Appellant did not ask that the jury be instructed to disregard the questions and answers, nor did he move for a mistrial, which are the steps we have said should be taken in such a situation. *Bryant v. State, supra,* at page 585 of 207 Md. Nevertheless, we feel constrained to say that the questions asked were clearly improper.

Because of the prejudice to the appellant from the failure of the trial court to examine the jurors as to possible racial prejudice, the case is reversed and remanded for a new trial.

*Judgment reversed and case remanded for a new trial.*