## BROWN v. STATE

[No. 180, September Term, 1959.]

292

*Decided April 14, 1960.*

The cause was argued before BRUNE, C. J., and HENDERSON, HAMMOND, PRESCOTT and HORNEY, JJ.

*Richard M. Pollitt,* with whom were *Vaughn E. Richardson* and *Charles E. Edmondson* on the brief, for the appellant.

*Clayton A. Dietrich, Assistant Attorney General,* with whom were *C. Ferdinand Sybert, Attorney General, C. Burnam Mace, State's Attorney for Dorchester County, Alfred T. Truitt, Jr., State's Attorney for Wicomico County,* and *Hamilton P. Fox, Jr., Special Assistant State's Attorney for Wicomico County,* on the brief, for the appellee.

PRESCOTT, J., delivered the opinion of the Court.

The appellant, Johnnie Brown, was indicted by the Grand Jury for Wicomico County on September 9, 1958, on a charge of murder. After various preliminary motions, the case was removed to Dorchester County for trial, the defendant was convicted of murder in the first degree and sentenced to death, but, on appeal, this Court reversed and remanded the case for a new trial (220 Md. 29).

The evidence produced by the State at the second trial showed that on September 6, 1958, Johnnie Brown went to the Acme Market and to Ralph & Gaskill, a men's clothing store, in Salisbury and attempted to pass forged checks. The managers of the respective stores checked with the purported makers of the checks, and, upon discovery that they were forged, refused to cash them. The Salisbury Police were notified of these attempts and after being given a description of Brown, they started to look for him.

After his apprehension that same evening, Brown was taken at around 9:00 P.M. into Ralph & Gaskill's store by Officer Stephens of the Salisbury Police Department, where he was identified as the man the police were seeking. Brown and the officer then started to walk toward Police Head-

quarters about two blocks from the store. Several witnesses saw them walking together; Brown was not handcuffed nor under any form of physical restraint.

The entrance to the police department is through an alley leading from Division Street to the rear of City Hall. This alley is wide enough for one car and has a sidewalk on one side. It is the regular entrance used by the police to and from their station. The testimony was that Brown and the officer had entered the alley and proceeded about two-thirds of its length.

Two teen-aged girls, Beula and Judy Hastings, who were on their way to a dance, had seen the officer and the defendant on the street, and had followed them and watched them as they proceeded down the alley. The girls testified that after the two men had proceeded part of the way through the alley they heard Brown shout, "Hey, you," and saw him draw a gun from inside his coat. They said the officer then turned around to face Brown and reached for the gun. It appeared to the girls that there was going to be a struggle and they jumped behind a building. A moment after they had reached this position of safety, the girls heard a single shot fired. They testified that they thought the officer had shot Brown and they started back into the alley to look, when Brown ran from the alley with the gun in his right hand. They looked into the alley but did not see the officer. They and other witnesses told another officer, Officer Kenney, the route Brown had taken, and he apprehended Brown shortly thereafter about two blocks from the scene, where he had hidden in some bushes.

When Brown was arrested, the gun was still in his possession. A bullet and shell later found in the alley were identified as coming from his gun by a ballistics expert from the F.B.I. The bullet showed no signs of bloodstains. The expert also stated that the gun could not be accidentally discharged without a pull on the trigger.

After the shooting, Officer Stephens ran into Police Headquarters bleeding profusely from a wound in his neck. He was taken to a hospital nearby, where he died a short time later. An autopsy showed a bullet wound which, in the opin-

ion of the medical examiner, entered the back at about the level of the third rib and came out the front of the neck.

After Brown's arrest several checks were found in his pockets which were identified as the same or similar to the ones he had attempted to cash at the two stores. Also found in his possession were several bullets of the same calibre as that found in the alley, and various other articles.

The case was tried before two judges and a jury, and resulted in a verdict that the defendant was guilty of murder in the first degree, and he was given a death sentence.

The appellant's first assignment of error is the trial court's refusal to grant his prayer relating to circumstantial evidence. This prayer was in the following form:

"The Court instructs the jury that any material fact, including the corpus delicti and the identity of the accused, may be proved by circumstantial evidence; but, in order to justify the inference of guilt from such evidence, the existence of the inculpatory facts must be absolutely incompatible with the innocence of the accused and insusceptible of explanation upon any other hypothesis than that of his guilt. If there is reasonable doubt as to any one circumstance forming part of a combination of circumstances on which guilt is dependent, the accused must be acquitted. In particular, circumstantial evidence to establish the corpus delicti must be of the most cogent and convincing character. Circumstantial evidence is intrinsically liable to error and abuse in its application. It has often led to the conviction and punishment of persons whose innocence has afterwards become manifest. If the evidence consists of a multiplicity of proofs, or 'chain of circumstances,' or if the presumptive proof of guilt is dependent in part upon theories advanced by scientific experts, liability of error is greatly increased. These considerations emphasize the necessity of extreme caution in convicting on this kind of evidence, more particularly under the circumstances referred to."

It requires no more than a casual reading of the proposed

prayer to see that it is not based upon any previous decision of this Court, and we doubt that any Court has adopted such a drastic rule as that suggested in the prayer. We recently stated the rule to be that in every criminal case, evidence, to meet the test of legal sufficiency, must show directly, or support a rational inference of, the facts required to be proved; and the facts must be established, or the inference supported, beyond a reasonable doubt or to a moral certainty, or a reasonable doubt of an opposite fact must be created. And, when guilt is based *solely* upon circumstantial evidence, the circumstances, taken together, must be inconsistent with, or such as to exclude, every *reasonable* hypothesis or theory of innocence. *Vincent v. State,* 220 Md. 232, 237, 151 A. 2d 898. The Maryland rule is, we think, correctly stated in *Vincent,* but it is a far cry from the postulates contained in the requested prayer. The prayer would permit an inference of guilt upon circumstantial evidence only when the existence of the inculpatory facts is absolutely incompatible with the innocence of the accused and insusceptible of explanation upon *any* other hypothesis than that of his guilt. This would just about require proof of guilt in criminal cases to the degree of mathematical precision; a degree of proof that has never been deemed essential in Maryland, nor, insofar as it has come to our attention, elsewhere. Moreover, it is evident that the State did not rely upon circumstantial evidence alone to establish guilt: much of the evidence was direct. After pointing out these fatal fallacies in the first part of the prayer, we do not consider it necessary to discuss its other provisions. The trial court committed no error in refusing this instruction.

During the course of the trial, the appellant's counsel requested the court to instruct the jury that "[i]f there is any reasonable doubt in which of several degrees a defendant is guilty he can be convicted of the lowest only of those degrees." In Maryland, culpable homicides are divided into murder in the first and second degrees and manslaughter.[1] The State concedes that the requested instruction contains a

---

1. There is also manslaughter by automobile, not here involved.

correct statement of the law upon the subject, but contends that the court's instructions, when viewed as a whole, fairly covered the subject. In Maryland, our Rule specifically provides that the court need not grant any requested prayer if the matter be "fairly covered by the instructions actually given." Rule 739 b. The trial court not only instructed the jury that the defendant was presumed to be innocent until he was proved guilty beyond a reasonable doubt and to a moral certainty, but also set forth in detail the facts that the jury was required to find in order to convict the defendant of murder in the first degree, and then informed the jury that these facts must be found "from the evidence beyond a reasonable doubt * * * and to a moral certainty * * *." Moreover, the jury was instructed that "the burden is upon the State of establishing by proof every fact material to the guilt of the defendant, including every circumstance that enters into the grade or degree of the crime charged beyond a reasonable doubt and to a moral certainty * * *." While there seems to be some split in the authorities elsewhere concerning the necessity of granting such a prayer as is here being considered, *McAffee v. United States*, 105 F. 2d 21, 31, we think that in accordance with Rule 739 b, the subject matter contained in the requested instruction was "fairly covered" in the instructions actually given, and the jury was not misled upon the subject.

We turn now to the most troublesome question raised by the appellant. In his opening statement to the jury, defense counsel referred to the fact that the case had been tried before, an appeal to this Court had been taken, and, after reversal, the case was being retried. In his closing argument, the State's Attorney, over objection by the defense and a motion for a mistrial, was permitted to read to the jury the following part of our opinion in the former appeal, after explaining to them that it was from our opinion therein:

"In People v. Morse, the Court said that where a person has committed a crime '* * * and then uses a revolver carried by him with fatal effect in his effort to avoid arrest, it presents a question for the determination of a jury whether the person so killed

was not killed by the deliberate and premeditated intention of the one firing the shot.'

"In State v. Simborski, the Supreme Court of Errors of Connecticut pointed out that the accused, who had committed three crimes, saw the police approaching and, instead of stopping as ordered, ran into an alleyway, took out a revolver, and shot a policeman. The Court said, 'the inference is permissible, if not unavoidable, that he carried the revolver with the purpose of shooting and killing if necessary to prevent his capture, and this he actually did. The trial court could reasonably find a deliberate and premeditated design to effect the death of any person who should attempt to prevent his escape. * * * Assuming that the accused did not decide to shoot until he stopped in the back yard and Koella appeared around the corner of the house, there was still time for him to deliberate after he had stopped and while he was removing his revolver from the holster.'

"In the case before us the same inference could be drawn from the carrying of the revolver by Brown, and the ample time he had to deliberate as he was being walked to the police station and as he was taking the revolver from his pocket.

"Because of the prejudice to the appellant from the failure of the trial court to examine the jurors as to possible racial prejudice, the case is reversed and remanded for a new trial."

The appellant contends that this argument, in effect, told the jury that the highest Court in this state had already determined that the defendant was guilty of first degree murder, and it would be highly improper for the jurors to reach any other verdict, which, obviously, was very prejudicial to the defendant's cause. The State counters by saying that defense counsel was the first to mention the matter of a former trial, and, if any harm were done to the defense, it was promptly erased by the court's admonishing the jury to

consider only the facts which they had heard from the witness stand. It is true that the court, when overruling the motion for a mistrial, stated, "[t]he jury understand that they are the judges of the law and the facts, and they have heard the facts from the witness stand, and they apply the facts to what they believe the law to be." Later, in its formal charge to the jury, the court also informed the jury that it had been brought to their attention that this case had been tried before; that it had gone to the Court of Appeals and had been returned and was then being tried a second time; that "in deliberating and making up your verdict * * * you are not to consider that this case was tried before, what the outcome was, or anything concerning it"; that the case was being tried "new, and the only thing that you are to consider here today are the witnesses and the evidence that you have heard from the witness stand together with the law as we have tried to give it to you * * *." But at no time did the court inform the jury that they were not at liberty to consider any and all portions of our former opinion, which had been read to them. And it will be noted that the portions of the opinion read contained not only our conclusions with reference to the law relating to murder, but also very cogent language with reference to facts, and permissible, "if not unavoidable," inferences to be drawn from the fact that an accused, who had committed previous crimes, saw the police approaching, and, instead of stopping as ordered, ran into an alley, took out a revolver, and shot a policeman.

In L. R. A. 1918 D 64, it is stated that the courts that have passed upon the propriety of referring to the opinions on appeal of previous trials in arguments to juries have been almost unanimous in unreservedly condemning as grave misconduct the use by counsel, in arguments to the jury in second trials, of their opinions upon reversing judgments following verdicts on first trials. In 53 Am. Jur., *Trial,* Section 489, we find the same general statement couched in slightly different language. There it is said that while there has been some intimation to the contrary, as a general rule, reference by counsel, in argument to the jury on a later trial of a cause, to previous trials and hearings in the same cause is

not only improper, but is regarded as a very serious offense,[2] which unless the circumstances show that the misconduct was harmless, may furnish ground for reversal of the judgment, and that this rule extends to references to opinions rendered on former appeals. See also 88 C. J. S., *Trial,* Section 179; *Baker v. City of Madison,* 22 N. W. 141 (Wis.) ; *Laughlin v. Street Ry. Co. of Grand Rapids,* 44 N. W. 1049 (Mich.) ; *Clark v. Iowa Cent. Ry. Co.,* 144 N. W. 332, 334, (Iowa) ; *People v. Carroll,* 12 N. E. 2d 169 (N. Y.) ; 23 C. J. S., *Criminal Law,* p. 545; *State v. Rideau,* 42 So. 973 (La.) ; *Davis v. State,* 105 So. 677, 678, (Ala.) ; *State v. Dickey,* 37 S. E. 695, 696 (W. Va.) ; *People v. Rees,* 109 N. E. 473, 476 (Ill.). Cf. *Triplett v. Napier,* 286 S. W. 2d 87, 90 (Ky.).

In the *Laughlin* case, *supra,* a civil one, counsel was permitted to read to the jury the appellate court's decision in the same case. He accompanied his reading by a statement that he intended to show that the appellate court had said that the testimony on the first trial tended to show a certain fact. The Supreme Court of Michigan said: "These remarks of counsel, and the reading of the opinion to the jury were highly improper. Such practice is very reprehensible. Fair and impartial verdicts cannot be obtained when such means are resorted to for the purpose of influencing the jury."

The courts, generally, seem to base their rulings upon the fact that quite frequently the evidence in the second trial is different from that in the first, that the juries are required to find the facts from the evidence presented at the trial, and that the juries take the law solely from the instructions of the trial courts (a reason that would not apply to criminal proceedings in Maryland, due to our unusual constitutional provision that the juries, in such proceedings, are the judges of the law as well as the facts).

---

2. In repeating this statement from Am. Jur., we have no intention of intimating that all references to previous trials and hearings during argument are to be condemned. It is frequently proper, under the circumstances of a particular case, to do so. Our ruling upon the question under consideration is confined to the facts presented in the case at bar.

The specific question now under consideration does not seem to have been passed upon by this Court before. In *Newton v. State,* 147 Md. 71, 92, 127 A. 123, a witness, one Dickey, was upon the stand, having been called by the defendant. The witness had been jointly indicted for conspiracy with the defendant, but he had been separately tried and convicted. A question arose as to whether the witness could establish as a fact a certain statement contained in a letter. The court informed the State's Attorney that it understood the State's point of view, namely, that the statement contained in the letter was false, but inquired if the traverser could not still show that the statement was correct. Whereupon, the State's Attorney replied, "No sir, because I have tried this very traverser [the witness] and heard him swear that he did not [do what the statement said had been done]." This Court said that these remarks were "exceedingly improper and calculated to unfairly prejudice the jury," but, as the remarks were upon motion stricken and the defendant asked for no other action on the part of the court, the court's failure to instruct the jury to disregard the remarks was not reversible error.

In *Callan v. State,* 156 Md. 459, 468, 144 A. 350, it was held that any damage done by an erroneous statement of counsel outside of the testimony was cured by a prompt rebuke of counsel by the court with instructions to the jury to disregard the remarks.

As we have pointed out above, the court, in the instant case, permitted a part of our opinion in the former appeal to be read to the jury over the objection of the traverser, and never was the jury told that they were to ignore or disregard any portion so read to them. It dealt with a question of fact vital to a conviction of murder in the first degree: whether the homicide was committed with a deliberate and premeditated design to effect death. It cited with approval the case of *State v. Simborski,* wherein the facts were strikingly similar to those in the case at bar and the Court there stated that the "inference is permissible, if not unavoidable" that the accused carried the revolver with the purpose of shooting and killing if necessary to avoid his capture, "and this he actually did." This was followed by a statement by

us that the same inference could be drawn in the instant case from the carrying of the gun by Brown.

We are unable to escape the very great probability, in this most serious case, of prejudice to the defendant's cause in reading to the jury anything that we said concerning the facts of the case; and we are unable to conclude that the court's instructions, in general terms, that the jurors knew that they were to determine the questions of fact and "the only thing that you [the jurors] are to consider here today are the witnesses and the evidence" neutralized the effect of that prejudice. Surely, the court was not attempting to instruct the jury to ignore the arguments of counsel completely. Such an instruction would have been error itself; the arguments of counsel are a very important part of a trial. We think the accused is correct in contending that, in effect, the part of our opinion read informed the jury that the Court of Appeals thought that the State had adduced sufficient evidence to support an inference of premeditation and deliberation upon his part. The practical effect of the reading of this portion of our opinion may well have been to tell the jury what inference should be drawn, not merely what inference was legally permissible, from certain facts.

Because of our constitutional provision that the jurors are the judges of the law as well as the facts in criminal cases, the juries in Maryland, in such cases, are not bound by the instructions of the trial courts, the same being only advisory in nature. We, therefore, conclude that it is permissible for counsel in argument in criminal cases to refer to the opinions of the Court of Appeals, even if the opinion be in the same case in a former appeal, insofar as they relate to questions of law, alone, but that counsel should not be permitted during argument to use our opinions in the same case concerning matters that relate to questions of fact. We hold that the trial court might properly have permitted the State's Attorney to read any portion of our previous opinion that referred solely to relevant questions of law; but, since the appellant had objected, as soon as he began reading any portion that discussed questions of fact, including inferences, he should have been stopped and the jury instructed to disregard any part that related to the facts.

We regret the necessity for requiring this case to be again tried, but, under the traditional administration of justice in this country, every defendant is entitled to a fair and impartial trial.

*Judgment reversed, and case remanded for a new trial.*