Johnnie BROWN

v.

Vernon L. PEPERSACK, Warden, Maryland Penitentiary.

Civ. No. 14372.

United States District Court
D. Maryland.

May 24, 1963.

H. Russell Smouse (appointed by Court), Baltimore, Md., for petitioner.

Thomas B. Finan, Atty. Gen. of Maryland, and Robert F. Sweeney, Asst. Atty. Gen. of Maryland, Baltimore, Md., for respondent.

THOMSEN, Chief Judge.

This case arises out of a petition for a writ of habeas corpus filed herein by Brown, a State prisoner, who is under sentence of death for the first degree murder of a policeman in Salisbury, Wicomico County, Maryland. In his petition, on the stand, and in a statement of contentions filed later in the hearing, Brown raised a variety of points, most

of which had theretofore been considered by the State Courts, but which have been again considered by this Court, after giving Brown unlimited opportunity to present evidence on each point and after hearing evidence offered by respondent in reply. Although not formally abandoning even the most far-fetched contentions made by Brown, his capable and conscientious counsel, appointed by this Court, has relied principally upon the failure of the Judges of the First Judicial Circuit of Maryland to remove the criminal case for its third trial to some court on the Western Shore of Maryland, rather than to the Circuit Court for Talbot County, at Easton, in the Second Judicial Circuit, where the third trial was held. The facts bearing on this point will be discussed at length below; but it may be noted now that Brown's experienced and able trial counsel asked only to have the case removed from the First Judicial Circuit and testified in this Court that he was satisfied then and is satisfied now that Brown would receive and did receive in Easton as fair a trial as he could have received anywhere in the State.[1]

Brown does not deny that he shot the policeman after the officer had arrested him on a charge of forgery; he contends, however, that the shooting was accidental. Brown was indicted for murder by the Grand Jury for Wicomico County, and when he and his family were unable to obtain counsel,[2] the Court appointed Vaughn E. Richardson, Esq., of Salisbury, to represent Brown. Richardson had his associate, Richard M. Pollitt, Esq., handle the legal research, as he customarily does in the ten or twelve capital cases which Richardson defends every year in the courts on the Eastern Shore. Richardson was willing at all times to turn over the defense to any

counsel Brown might obtain, but although Tucker R. Dearing, Esq., of Baltimore, an attorney for the NAACP, attended one of the trials, neither he nor the NAACP thought it necessary or desirable to offer legal assistance.

On motion filed by Richardson the case was removed from Wicomico County to Dorchester County (at Cambridge), where the first two trials were held. Both trials resulted in verdicts of guilty of murder in the first degree and in death sentences, but both convictions were reversed by the Court of Appeals of Maryland, the first because of the failure of the trial Judges to ask a particular question of the jurors on their voir dire and because of certain questions asked by the Judges during the trial, Brown v. State, 220 Md. 29, 150 A.2d 895, the second because the Judges permitted the State's Attorney to read to the jury portions of the opinion of the Court of Appeals dealing with facts as well as law. Brown v. State, 222 Md. 290, 159 A.2d 844.

After the second remand Brown told Richardson that he would like to have the case removed to Cumberland or Hagerstown or some other place on the Western Shore. Richardson discussed the matter with Brown and told Brown that he thought the Judges would remove the case from Cambridge but would probably send it to some Court in the Second Judicial Circuit, comprising the five counties on the upper Eastern Shore. Richardson told Brown that he knew the Judges of that Circuit, and that he believed Brown could get a fair trial there, particularly in the Circuit Court for Talbot County (at Easton) or the Circuit Court for Cecil County (at Elkton), to one of which courts he believed the case would be sent. In both of those counties there is a wider cultural background of

1. The First Judicial Circuit embraces the four southernmost counties on the Eastern Shore of Maryland, Dorchester, Somerset, Wicomico and Worcester. The Second Judicial Circuit embraces the five counties on the upper Shore, Caroline, Cecil, Kent, Queen Anne's and Talbot.

2. Brown communicated with Howard H. Carwile, Esq., and Spottswood W. Robinson, III, Esq., but they declined to represent him. Brown's contention that they were prevented from so doing by the State is contradicted by the evidence.

potential jurors than in the predominantly rural counties. Specifically, in Talbot County there are many in-migrants from the North and the West, attracted by the life on the rivers of that county.

Without complaint from Brown, Richardson filed a motion to remove the case from the First Judicial Circuit. The motion was granted and Judges Duer and Childs of the First Judicial Circuit signed an order removing the case to Talbot County. There the case was tried for the third time, with great care by the three presiding Judges[3] to see that no prejudicial matter came before the jury. Again the verdict was first degree murder and the sentence death. An appeal from this conviction was based upon the fact that the court had heard arguments on the prayers and the proposed instructions in chambers out of the presence of the defendant. The judgment was affirmed, Brown v. State, 225 Md. 349, 170 A.2d 300, 85 A.L.R.2d 1107.

Brown then filed a petition for a writ of habeas corpus in this Federal Court, and H. Russell Smouse, Esq., his present counsel, was appointed to represent him. This Court withheld action on the points raised by the petition, so that the State Courts might have an opportunity to rule on the points which were raised therein for the first time. Smouse assisted Brown in preparing his petition under the Uniform Post Conviction Procedure Act[4] which was filed in the Circuit Court, but at the hearing on that petition before Judge Rasin, of the Second Judicial Circuit, Brown was represented by his original trial counsel. Brown had made no complaint about his trial counsel until after his third conviction was affirmed on appeal; since then he has alternated between criticism and apology for his criticism. Judge Rasin denied the petition for relief under the UPCPA. The Court of Appeals granted leave to appeal, and, without criticism of either counsel or Judge Rasin, vacated the judgment denying the UPCPA petition

and remanded the case "without affirmance or reversal, for the appointment of new counsel for the petitioner and for a new hearing on his petition, with such amendment or amendments thereof as may be appropriate." 228 Md. 657, 179 A.2d 420. The Court of Appeals indicated that in so directing, it was not intimating any opinion with regard to the merit or lack of merit of any of Brown's contentions except two, on which rulings adverse to Brown were rendered. Brown v. Warden, 228 Md. 654, 179 A.2d 419. The Court of Appeals stated that since all of the Judges of the First and Second Judicial Circuits had participated in the case in one way or another, "we assume that the petitioner and each of the Judges of those two Circuits will wish to have a Judge from some other Circuit designated to hear this case on remand, and such designation will be made promptly upon request." 228 Md. 657–658, 179 A.2d 421.

Pursuant thereto, Chief Judge Manley of the Supreme Bench of Baltimore City, a native of Western Maryland, was designated to hear the petition. He did so, at a hearing in Easton, at which Smouse represented Brown. There was a full hearing, at which Brown was given every opportunity to testify in support of his various contentions, and to present evidence relating to any other complaints he desired to assert. Judge Manley's careful opinion dealt with eight contentions, similar to those raised before this Court in the pending proceeding. He denied Brown's amended UPCPA petition, and his opinion, which was adopted by the Court of Appeals in denying leave to appeal, Brown v. Warden, 230 Md. 629, 186 A.2d 595, has been made a part of the record herein. A petition for a writ of certiorari was denied by the Supreme Court, Brown v. Maryland, 372 U.S. 960, 83 S.Ct. 1017, 10 L.Ed.2d 13.

This Court promptly issued a writ of habeas corpus ad testificandum and set the case for hearing. Every point raised

---

**3.** Chief Judge J. DeWeese Carter and Associate Judges Keating and Rollins.

**4.** Art. 27, sec. 645A et seq., 1957 Anno. Code of Maryland (Cum.Supp.).

by Brown and all evidence offered by either side, or by stipulation, or called for by the Court, has been carefully considered. It is unnecessary to discuss in detail all of Brown's contentions. Most of them are clearly without merit, because they are not only unsupported by the evidence, but are answered by the testimony of Richardson and of Dr. Hamilton, by the records, and by other evidence. Although some of the points may have been waived, even under the rule in Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837, I have considered all of them on their merits and on the evidence, and find none of them to justify any relief herein. Aside from the question of removal, only two require comment.

Brown acquiesced in the advice of his experienced counsel that he should not take the stand at his third trial, because the State had learned of his prior criminal record. See Hall v. Warden, 4 Cir., 313 F.2d 483, 486.

■ Although it may be the better practice to have the defendant present when the trial judge hears argument on the prayers and proposed instructions, the weight of authority supports the decision of the Court of Appeals of Maryland in this case that the consideration of prayers or instructions by the court in chambers out of the presence of the defendant and the jury violated no right guaranteed by either the State or Federal Constitution. See cases cited, 225 Md. at 353–354, 170 A.2d at 301–302. Cf. Near v. Cunningham, 4 Cir., 313 F.2d 929.

The failure to remove the case to some court on the Western Shore presents a more troublesome question. Easton is only fifty miles from Salisbury and little more than fifteen miles from Cambridge, which lies just across the Choptank River, the southern boundary of Talbot County. The evidence shows that the Salisbury *Times,* a paper which circulates in the other counties of the Eastern Shore, carried articles prejudicial to Brown. On the other hand, the Cambridge *Banner,* which also circulates in Talbot County, carried temperate articles about the first two trials. Richardson testified in this Court that Talbot County is more cosmopolitan than most of the Eastern Shore counties, that its jurors have a wide variety of cultural backgrounds, and that its Judges are liberal in granting a defendant's challenges. All of the Talbot County jurors called for the third trial were examined on their voir dire. Some of them had read or heard of the case and had formed an opinion with respect thereto. Those jurors were excused. Experienced counsel for Brown, aided by a Talbot County attorney enlisted for the purpose, chose a jury which he deemed satisfactory from a panel which included a reasonable number of Negroes. Richardson testified that he does not know of any reason why Brown could not or did not get a fair trial in Talbot County.

■■ It is true that Brown asked Richardson to try to remove the case to the Western Shore and that, after consulting with Brown, Richardson filed a motion asking only that it be removed from the First Judicial Circuit. Richardson testified that the Judges ordinarily would not send a case to the Western Shore because of the expense involved. Inconvenience and expense are not factors to be weighed against the need for a fair trial, but when there is a choice between one fair forum and another, inconvenience and expense may properly be considered.[5] This Court is convinced that Richardson was satisfied that Brown could get a fair trial in Talbot County, that Richardson persuaded Brown of that fact, and that Brown did in fact receive a fair trial. Brown made no objection to being tried in Talbot County until after his conviction had been affirmed on appeal. Whether or not this

5. The choice of Talbot County was probably made after Judges Duer and Childs had discussed the matter with the Chief Judge of the Second Judicial Circuit, Judge J. DeWeese Carter.

Court could properly hold that the point was waived, Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837, the fact that Brown made no objection may be considered as tending to show that he was satisfied with his counsel's action after they had discussed the matter together.

▮ The question presented by this petition is whether the State Judges deprived Brown of any constitutional right by failing to send the case to some court other than the Circuit Court for Talbot County for trial, even though the motion filed was merely to remove it from the First Judicial Circuit. On balance, another judge may feel that in their place he would have sent it to the Western Shore. But that is not the issue here. This Court would not be justified in substituting its opinion for that of the State Judges unless this Court finds that the action of the State Court deprived Brown of his constitutional rights by requiring him to be tried in a forum which was or was likely to be prejudiced against him. The order for removal to Talbot County was signed by two conscientious Judges, who knew the conditions on the Eastern Shore far better than this Court can possibly know them. Their action was approved by Judge Manley, one of the ablest and most experienced of Maryland judges, who was selected to hear the UPCPA proceeding, and by the Court of Appeals of Maryland, which adopted Judge Manley's opinion.[6]

After careful consideration of all the evidence in the case, I conclude that Brown received a fair trial in Talbot County, and that he was not deprived of any constitutional right by the selection of Talbot County as the forum for his third trial nor by any other action of the State Courts.

The petition filed by Brown is hereby dismissed and Brown is hereby remanded to the custody of the respondent.

6. Judge Manley's opinion on this point reads as follows:

"He now complains that when the Dorchester County Court, after the second trial, removed the case to the Circuit Court for Talbot County (a different Judicial Circuit) it deprived him of his Constitutional rights, and the removal should not have been to any of the Counties on the Eastern Shore but to some other County in the State. But an examination of the files in this case discloses that the defendant got just what he requested. The defendant's petition on which Judges Duer and Childs signed an order on August 17, 1960, sending the case to Talbot County of the Second Judicial Circuit, alleged that he could not 'have a fair and impartial trial in this Court (Dorchester County) or in any other Court in the First Judicial Circuit of Maryland * * *', for the reasons stated therein, and prayed the Court 'to pass an order directing the Clerk of the Circuit Court for Dorchester County to transmit the record * * * to some Court outside the First Judicial Circuit of Maryland for trial'.

"The privilege of removal is a constitutional right. Art. 4, Sec. 8, Md.Constitution. This right contemplates a removal to a court where the jury is unprejudiced and will render a fair and impartial verdict based on the law and the evidence. Jones v. State, 185 Md. 481, 486 [45 A.2d 350]. The defendant does not have the right to designate the county to which a case shall be sent on removal. The selection of the forum is a matter resting in the discretion of the removing court. After final judgment, on appeal, the Court of Appeals will review the selection made by the trial court. Lee v. State, 161 Md. 430 [157 A. 723]. This contention lacks merit for three reasons: (1) the failure of the defendant to present this point to the Court of Appeals in the third appeal constitutes a waiver thereof. Jackson v. Warden of Maryland House of Correction, 218 Md. 652 [146 A.2d 438]; (2) there has been no showing of any abuse of discretion, Williams et al. v. State, 226 Md. 614, 174 A.2d 719; and (3) no request was made at the time for a removal from the Eastern Shore of Maryland. A further reason is that having removed the case once, the defendant did not have a right to request a second removal. The right to removal can be exercised only once. Lee v. State, 164 Md. 550 [165 A. 614]."