**Johnnie BROWN, Appellant,**

v.

**Vernon L. PEPERSACK, Warden Maryland Penitentiary, Appellee.**

**No. 9148.**

United States Court of Appeals
Fourth Circuit.

Argued Jan. 8, 1964.

Decided June 23, 1964.

Certiorari Denied Nov. 16, 1964.
See 85 S.Ct. 269.

H. Russell Smouse, Baltimore, Md. (Court-assigned counsel), for appellant.

Robert F. Sweeney, Asst. Atty. Gen. of Maryland (Thomas B. Finan, Atty. Gen. of Maryland, on brief), for appellee.

Before SOBELOFF, Chief Judge, and HAYNSWORTH and J. SPENCER BELL, Circuit Judges.

HAYNSWORTH, Circuit Judge:

Much tried Johnnie Brown, whose rights have received extensive and sympathetic care by the Courts of Maryland, now seeks his release through a writ of habeas corpus in the federal courts. The District Court denied the writ, we think properly.

Johnnie Brown, a Negro, killed a policeman in Salisbury, Maryland, after he had been placed under arrest on forgery charges. There was never any question about the homicide, and Brown's only possible defense was that the killing was accidental, or not premeditated.

After Brown was indicted for murder by a Wicomico County Grand Jury in Salisbury, the county seat, the case was removed for trial to Dorchester County. There had been some rather inflammatory articles in a newspaper published in Salisbury, but the newspapers published in Cambridge, the county seat of Dorchester County, were moderate in their reports of the crime and of the trials.

■ The State Court had appointed to represent Brown, Vaughn E. Richardson and Richard M. Pollit, both of Salisbury. Mr. Richardson is one of the most experienced criminal lawyers in Maryland and is said to have appeared as defense counsel in some 170 capital cases since he was admitted to the bar in 1946. Mr. Pollit is his associate.[1]

Brown's first trial in Cambridge, Maryland, resulted in a verdict of murder in the first degree. He was sentenced to death. Messrs. Richardson and Pollit took an appeal to the Maryland Court of Appeals, however, and obtained a reversal of that conviction upon the ground that they had not been permitted to ask prospective jurors on their voir dire examination whether or not they entertained any prejudice against Negroes.[2]

On the second trial in Cambridge, Brown was again found guilty of murder in the first degree and was again sentenced to death. Messrs. Richardson and Pollit again appealed to the Court of Appeals of Maryland and again obtained a reversal of the second conviction. The basis of the reversal of the second conviction was that the prosecutor had read to the jury portions of the opinion of the Court of Appeals reversing the conviction in the first trial, extracts which the Court found prejudicial to Brown on the second trial.[3]

■ Brown's case was then removed from Dorchester County to Talbot County for the third trial. For that third trial, the three judges of the Second Judicial Circuit of Maryland sat together. The Talbot County jury, as the two Dorchester County juries before it, brought in a verdict of murder in the

---

1. Among other things, Brown now says that he was given insufficient time to obtain counsel of his own choosing before Messrs. Richardson and Pollit were appointed to represent him. The contention, as a constitutional objection, is frivolous. The Courts are under pressure to appoint counsel at a very early stage in the proceedings when the absence of advice by counsel might be fatal to the adequate protection of the constitutional rights of the accused. The appointment of counsel willing to serve, however, did not prevent the accused from obtaining some other attorney of his own choice, and there was ample time after the appointment of Messrs. Richardson and Pollit before the trial of the case for Brown to have obtained counsel of his own choice had he wished and been able to do so. He had communicated with two or more attorneys, whom he knew personally or by reputation, but they were unwilling to represent him, and Brown appears to have made no further effort in that direction after Messrs. Richardson and Pollit became actively engaged in the case.

2. Brown v. State, 220 Md. 29, 150 A.2d 895.

3. Brown v. State, 222 Md. 290, 159 A.2d 844.

first degree, and Brown, for the third time, was sentenced to death. Messrs. Richardson and Pollit again appealed to the Court of Appeals of Maryland, but this time the conviction was affirmed.[4] The principal ground of appeal there was that proposed requests for instructions were discussed by the Three-Judge-Court with counsel in chambers out of the presence of the defendant. The Maryland Court of Appeals held that such a conference was not a part of the trial, and that no constitutional or statutory provision required that the defendant be then present.[5]

Brown then began a proceeding under Maryland's Post-Conviction Procedure Act, collaterally attacking the judgment of conviction in the third trial. Messrs. Richardson and Pollit appeared for Brown in the lower court, apparently in default of any other attorney, though Brown had included in his petition criticism of his attorneys for not having procured the removal of his case, after the second trial, to some place more distant from Cambridge than Talbot County. On application to the Maryland Court of Appeals, it vacated the denial of post conviction relief [6] and remanded the proceedings with instructions that other counsel be appointed to represent Brown, and it designated the Chief Judge of the Supreme Bench of Baltimore to conduct a second post-conviction hearing.

Mr. H. Russell Smouse, an experienced attorney of Baltimore who has ably represented Brown in this proceeding, had been appointed by the District Court to represent Brown in a habeas corpus proceeding filed before the post-conviction hearing was held. Mr. Smouse appeared as Brown's attorney in the second post-conviction hearing before Chief Judge Manley. After full inquiry, however, Judge Manley denied post-conviction relief. The Court of Appeals for Maryland denied leave to appeal, adopting as its own the opinion of Judge Manley.[7]

After Brown's case had thus been considered five times by the Maryland Court of Appeals, he was left without further remedy in the state courts. He then, with the assistance of Mr. Smouse, proceeded with the petition for habeas corpus in the District Court. That petition was denied after a hearing and thorough consideration by the District Court.[8] This appeal followed.

■ The principal point urged in the habeas corpus proceeding is that Brown did not have adequate representation by counsel when his case was removed after the second trial from Dorchester to Talbot County. The suggestion is that Mr. Richardson should have requested that the case be removed to the Western Shore, and that such a request should have been granted by the Judges of the First Judicial Circuit of Maryland. The District Judge concluded that the contention was unfounded, and we agree.

After the Maryland Court of Appeals had reversed Brown's second conviction, Brown suggested to Mr. Richardson that he would like to have the case removed for a second time, this time from Dorchester County and Cambridge to some place in the Western part of Maryland. Mr. Richardson discussed the matter with him, expressing the opinion that the Judges of the First Judicial Circuit [9] would grant a requested transfer to one of the counties in the Second Judicial Circuit, but that he was doubtful if they

---

4. Brown v. State, 225 Md. 349, 170 A.2d 300, 85 A.L.R.2d 1107.

5. This contention Brown repeats in his habeas corpus proceeding. We think it sufficiently answered by the opinion of the Maryland Court of Appeals.

6. Brown v. Warden, Maryland Penitentiary, 228 Md. 654, 179 A.2d 419.

7. Brown v. Warden of Maryland Penitentiary, 230 Md. 629, 186 A.2d 595.

8. Brown v. Pepersack, D.C.Md., 217 F. Supp. 547.

9. The First Judicial Circuit comprises the four southernmost counties on the Eastern Shore and includes both Wicomico and Dorchester Counties. The five northernmost counties on the Eastern Shore comprise the Second Judicial Circuit, Talbot being one of them.

would transfer the case to the Western part of the State or even to Baltimore. He thought either Talbot or Kent Counties would be very favorable for a trial. He knew the Judges of the Second Circuit and thought they were very liberal in granting challenges to jurors in capital cases.[10] He thought the people of Talbot and Kent Counties much more cosmopolitan than the people of Wicomico or Dorchester, and he had a number of acquaintances in those counties.

Mr. Richardson was not content with his general opinion about the appropriateness of a county in the Second Circuit for the trial of Brown's case. Through prospective legal associates in Talbot and Kent Counties, he made inquiry as to the extent, if any, that Brown's case was a matter of general information or interest in these counties. Entirely reassured as a result of those inquiries, he filed a petition for a transfer from the First Judicial Circuit without specifying the county to which he wished the case transferred, but knowing that the Judges of the First Judicial Circuit, without further suggestion, would likely transfer the case either to Talbot or Kent. The transfer of the case to Talbot was thus within his expectation and in accordance with his wish.

The circumstances do not disclose anything remotely approaching neglect by Messrs. Richardson and Pollit of their client's interest. They appear to have stoutly defended him through three trials and during three appeals, two of which were successful. The decision to seek a second removal, without insistence upon removal to the Western Shore, was made only after considerable reflection and actual investigation which provided a sound basis for their judgment that Talbot or Kent would provide a favorable

atmosphere for the third trial, a fair jury and fair judges.

The most significant thing in the case, however, is the fact that Richardson's judgment appears to have been entirely vindicated. At least, there is no suggestion that the trial at Easton in Talbot County was not completely fair and free of all influence of any prejudice against the defendant personally or against the race of which he is a member. There were a number of Negroes on the jury panel, and the Court's liberalism in excusing all jurors who gave unsatisfactory answers to any of Richardson's questions left the jury which actually sat as completely free of any charge of prejudice or bias as any jury might be.

Indeed, if any fault might be found with Mr. Richardson's judgment on the petition for removal of the case from Dorchester County, it would avail nothing here if Brown, in fact, obtained a trial which was completely fair and free of prejudice. Having obtained the fair trial to which he was entitled, no question of constitutional dimension arises out of a suggestion that Mr. Richardson might have had more assurance that a fair trial would result if the transfer had been to some court on the Western Shore.

A review of all of these proceedings and a reading of the five opinions of Maryland's Court of Appeals reveal an assiduous protection of Brown's legal rights. The third trial has withstood the close scrutiny born of such assiduous concern, both in the Maryland Courts and in the District Court. Here, since there is no basis for a claim of unfairness in the third trial, we find no constitutional ground for federal interference with the state court's judgment.

Affirmed.

10. It appears that the three Judges of the Second Circuit excused each juror whose

answers to Mr. Richardson's questions on voir dire were unsatisfactory to him.