759 A.2d 819

Ricky DINGLE

v.

STATE of Maryland.

No. 87, Sept. Term, 1999.

Court of Appeals of Maryland.

Sept. 15, 2000.

2

Geraldine K. Sweeney, Asst. Public Defender (Stephen E. Harris, Public Defender, on brief), Baltimore, for petitioner.

Devy Patterson Russell, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., on brief), Baltimore, for respondent.

Harry B. Siegel, Columbia, brief of Amicus Curiae of the Maryland Trial Lawyers Ass'n filed on behalf of the Petitioner.

Argued before BELL, C.J., and ELDRIDGE, RODOWSKY, RAKER, WILNER, CATHELL and HARRELL, JJ.

BELL, Chief Judge.

The issue this case presents,[1] which involves the voir dire process, had its genesis in the Circuit Court for Baltimore County, in the trial, for robbery with a dangerous and deadly weapon and related charges, of the petitioner, Ricky Dingle and two co-defendants.[2] During the voir dire process, the petitioner sought to have the trial court inquire of the venire panel whether any of them had certain experiences or associations.[3] While the court agreed to, and did, make the inquiries the petitioner requested, it did so by joining with each of the petitioner's requested inquiries, one suggested by the State, namely an inquiry into whether the experience or association posited would affect the prospective juror's ability to be fair

---

1. In his Petition for Writ of Certiorari, the petitioner asked this Court to address the following question:
 "Did the lower court err in approving, over defense objection, a method of voir dire (a two-part question, respond only if your answer to both parts is in the affirmative) which made the jurors, rather than the trial judge, the final arbiter of impartiality and prevented defense counsel from exercise of his challenges for cause?"

2. The facts of the case and the evidence produced at trial are neither relevant nor in dispute. Thus, we will not set them out in this opinion.

3. The areas of concern to the petitioner, about which the petitioner asked the court to inquire, were: 1) experience as a victim of crime; 2) experience as an accused or convicted person; 3) experience as a witness in a criminal case; 4) experience as a petit juror in a criminal case or as a member of a grand jury; 5) membership in any victims' rights group; 6) connection with the legal profession; and 7) association with law enforcement.

**4**

and impartial.[4] Thus, the inquiry the court conducted to satisfy the petitioner's concerns consisted of a series of two part questions, the answers to which, the court instructed, need not be revealed unless a member of the venire panel answered both parts in the affirmative.[5] As to that, the venire panel was instructed as follows:

4. The specific questions asked were:
 "Have you or any family member or close personal friend ever been the victim of a crime, and if your answer to that part of the question is yes, would that fact interfere with your ability to be fair and impartial in this case in which the state alleges that the defendants have committed a crime?
 "Have you or any family member or close personal friend ever been accused of committing a crime other than a minor traffic violation, and if your answer to the question is yes, would the fact that you or your family member or friend has been accused of a crime interfere with your ability to be fair and impartial in this case? If so, if your answer is yes to both parts of the question, please stand.
 "Have you or any family member or close personal friend ever been a witness in a criminal case, and if your answer to that question is yes, would that fact affect your ability to be fair and impartial in this case?
 "Have you or any of your family members or close personal friends ever served before as a juror either in a criminal case on a petit jury or on the grand jury, and if your answer to that question is yes, would that prior service as a juror interfere with your ability to be fair and impartial if you were seated as a juror in this case?
 "Do you or any family member or close personal friend belong to a victims' rights group such as the Roper Group, the Stephanie Roper Group, or Mothers Against Drunk Drivers, and if, in fact, your answer to that question is yes, would that fact interfere with your ability to be fair and impartial in this case?
 "Have you or any family member or close personal friend ever attended law school, studied the law, criminology, or corrections or been employed in the legal profession, either as a lawyer, a paralegal, or clerk or secretary, and if your answer to that question is yes, would that fact interfere with your ability to be fair and impartial in this case?
 "Are any of you or your family members or close personal friends associated with members of any law-enforcement agency, like the Baltimore County Police Department, the Baltimore City Police Department, the Federal Bureau of Investigation, the Maryland State Police, the Secret Service? That's part A.
 "Part B of the question, and if you are so associated, would that fact interfere with your ability to be fair and impartial if you were seated as a juror in this case?"

5. A review of the record reveals that the trial court did not use only two-part questions and the format at issue in this case in the conduct of

"You should only stand if your answer is yes to both parts of the question. If your answer is no to either part of the question, then you should not stand. So once again, only stand if your answer is yes to both parts of the question."

The prospective jurors who stood and confirmed that their answer to the second part of the question was in the affirmative, thus indicating that they could not be fair, were, if reached, excused for cause, either on motion of the State or of the defense. What occurred during the inquiry into the prospective jurors' experience with crime victimization is illustrative:

"THE COURT: Again, a number of two-part questions, ladies and gentlemen. Only stand if your answer is yes to both parts of the question.

"Have you or any family member or close personal friend ever been a victim of a crime, and if your answer to that part of the question is yes, would that fact interfere with your ability to be fair and impartial in this case in which the state alleges that the defendants have committed a crime?

"So again, have you or any family member or a friend been the victim of a crime, and if the answer to that part of

---

voir dire. At times, it asked one part questions, specifically so advising the venire. When any one part question received a response, the court followed up with an additional question to determine if the prospective juror nevertheless could be fair. One such question inquired about an association that members of the panel might have, whether any member of the venire either had an account or conducted business with a particular bank. Those who stood in response were then asked if that relationship would "interfere with [their] ability to be fair and impartial in this case." The record also reflects that 22 venire persons were excused the cause.

The issue in this case is not about how well the trial court conducted voir dire; how well the trial court may have conducted the voir dire it allowed does not impact whether it erred in the manner in which it handled the propounding of the questions at issue here. If the questions at issue here should have been asked, and an answer obtained, without the State's suffix, reversal is required, however excellently the remainder of the process may have been conducted. Nor is it relevant how many persons were excused for cause. If the petitioner were potentially denied the right to challenge others, or even one person, who might have been subject to discharge because of the information generated, the many who were excused will matter not one whit.

**6**

the question is yes, would that fact interfere with your ability to be fair and impartial in this case? If so, please stand.

"All right. The gentleman in the white shirt.

"MR. BLANEY: Bruce Blaney, 639.

"THE COURT: And because of some involvement with a—a crime, you feel you couldn't be fair and impartial, sir?

"MR. BLANEY: A friend of mine—

"THE COURT: Nope, I didn't—please just answer the question.

"MR. BLANEY: Yes, sir.

"THE COURT: Thank you very much. You may be seated.

"Again, ladies and gentlemen, if you'd please simply answer the question without elaborating, it would be very helpful.

"Yes, ma'am.

"MS. CARRIGAN: 679, Barbara Carrigan.

"THE COURT: Miss Carrigan, you're saying because of some exposure to crime, you couldn't be fair and impartial? "MS. CARRIGAN: I could be fair. I'm sorry.[6]

"THE COURT: Okay. You could be fair. Then you may be seated.

"Again, only stand if your answer is yes to both parts of the question.

"Yes, sir.

"MR. MARSHALL: Tom Marshall, 643.

"THE COURT: All right. Mr. Marshall, you're saying that you could not be fair and impartial as a result of some exposure to crime?

"MR. MARSHALL: That's correct.

"THE COURT: All right. Thank you. Be seated.

---

6. Fortuitously, because she misunderstood the question, Ms. Carrigan inadvertently provided the court, and thus the petitioner, with relevant information.

"All right. The gentleman in the gray sports shirt.

"MR. FLANNIGAN: George Flannigan, 329.

"THE COURT: And you're saying you couldn't be fair and impartial, Mr. Flannigan?

"MR. FLANNIGAN: Yes, sir.

"THE COURT: Thank you. Be seated.

"The other gentleman in the gray sports shirt.

"MR. WORTH: James Worth, 637.

"THE COURT: And your answer is the same, sir?

"MR. WORTH: Yes.

"THE COURT: All right. You may be seated. Thank you.

"Ma'am.

"MS. MALICKI: Joan Malicki, number 658.

"THE COURT: All right. Miss Malicki, your answer is the same?

"MS. MALICKI: Yes.

"THE COURT: Be seated.

"MS. KNIGHT: Jeannine Knight, number 321.

"THE COURT: And Miss Knight, your answer is the same?

"MS. KNIGHT: Yes.

"THE COURT: All right. Thank you. You may be seated.

"Ma'am? Your name and juror number?

"MS. SPOHN: Suzanne Spohn, number 76.

"THE COURT: All right. Miss Spohn, your answer is the same?

"MS. SPOHN: I don't think I could be impartial in this crime.

"THE COURT: Well, again, you can't be fair and impartial then. Thank you. You may be seated.

"All right. The gentleman in the white shirt.

"MR. FAKERI: Alexander Fakeri, number 87.

"THE COURT: And Mr. Fakeri, your response is the same?

"MR. FAKERI: Yes, sir.

"THE COURT: All right. Thank you. Be seated.

"Ma'am?

"MS. BURMAN: Pamela Burman, 673.

"THE COURT: And Miss Burman, you also feel the same way?

"MS. BURMAN: Correct.

"THE COURT: Thank you. Be seated."

 The petitioner objected to the use of the two part format on a number of grounds, principally because he believed, and therefore argued, that asking compound questions and requiring an answer only if the prospective juror thought that he or she could not be fair, would, and, in fact did, result in a jury in which the venire persons themselves, by "unilateral decision," determined their fitness to serve on the jury. The petitioner also argued that conducting the voir dire in the manner the trial court did would, and in fact did, deprive the petitioner of information relevant and critical to the exercise of his challenges for cause. The objections were overruled. The court's rationale for the ruling is instructive:

"The court has asked the questions which the defense has presented in the two-part format I described on many occasions, and on many occasions we've had people stand up in response to those questions and say, Yes, Judge, I can't be fair and impartial, so it would appear to the court that the only reason for calling up the venire men here to the bench for individual voir dire is to allow the defense to develop more information which the defense intends to use in exercising its peremptory challenges, and therefore, the court declines to do so."

The petitioner's appeal to the Court of Special Appeals was unsuccessful. That court affirmed the judgment of the Circuit Court in an unreported opinion. We shall reverse the judgment of the intermediate appellate court, in the process confirming that the trial judge is charged with the impaneling of the jury and must determine, in the final analysis, the fitness of the individual venire persons. We shall hold that the voir

dire procedure utilized in this case usurped the court's responsibility in this regard.

 Voir dire, the process by which prospective jurors are examined to determine whether cause for disqualification exists, *see Boyd v. State*, 341 Md. 431, 435, 671 A.2d 33, 35 (1996), is the mechanism whereby the right to a fair and impartial jury, guaranteed by Art. 21 of the Maryland Declaration of Rights,[7] *see Grogg v. State*, 231 Md. 530, 532, 191 A.2d 435, 436 (1963), is given substance. *See Hill v. State*, 339 Md. 275, 280, 661 A.2d 1164, 1166 (1995); *Bedford v. State*, 317 Md. 659, 670, 566 A.2d 111, 116 (1989). The overarching purpose of voir dire in a criminal case is to ensure a fair and impartial jury. *See Boyd*, 341 Md. 431, 435, 671 A.2d 33, 35 (1996); *Hill*, 339 Md. 275, 279, 661 A.2d 1164, 1166 (1995); *Davis v. State*, 333 Md. 27, 34, 633 A.2d 867, 871 (1993); *Bedford*, 317 Md. 659, 670, 566 A.2d 111, 117 (1989); *Casey v. Roman Catholic Archbishop*, 217 Md. 595, 605, 143 A.2d 627, 631 (1958); *Adams v. State*, 200 Md. 133, 140, 88 A.2d 556, 559 (1952). In *Davis*, 333 Md. at 33, 633 A.2d at 871, *quoting Langley v. State*, 281 Md. 337, 340, 378 A.2d 1338, 1339 (1977) (*citing Waters v. State*, 51 Md. 430, 436 (1879)), we said, "a fundamental tenet underlying the practice of trial by jury is that each juror, as far as possible, be impartial and unbiased."

We recognized in *Davis* that:

There are two areas of inquiry that may uncover cause for disqualification: (1) an examination to determine whether prospective jurors meet the minimum statutory qualifications for jury service, *see* Maryland Code (1974, 1989 Repl. Vol., 1992 Cum.Supp.), Courts & Judicial Proceedings Article, § 8–207; or (2) " 'an examination of a juror . . . conducted strictly within the right to discover the state of mind of

---

7. Article 21 of the Maryland Declaration of Rights guarantees, "[t]hat in all criminal prosecutions, every man hath a right . . . to a speedy trial by an impartial jury, without whose unanimous consent he ought not to be found guilty." The Sixth Amendment of the United States Constitution similarly guarantees a criminal defendant, *inter alia*, "the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed."

the juror in respect to the matter in hand or any collateral matter reasonably liable to unduly influence him.' "

*Id.* at 35–36, 633 A.2d at 871–72, *quoting Bedford,* 317 Md. at 671, 566 A.2d at 117 (*quoting Corens v. State,* 185 Md. 561, 564, 45 A.2d 340, 343 (1946)). Thus, we said in *Hill,* 339 Md. at 279, 661 A.2d at 1166 (*quoting McGee v. State,* 219 Md. 53, 58, 146 A.2d 194, 196 (1959), in turn *quoting Adams v. State,* 200 Md. 133, 140, 88 A.2d 556, 559 (1952)):

> Undergirding the voir dire procedure and, hence, informing the trial court's exercise of discretion regarding the conduct of the voir dire, is a single, primary, and overriding principle or purpose: "to ascertain 'the existence of cause for disqualification.' "

In so doing, the questions should focus on issues particular to the defendant's case so that biases directly related to the crime, the witnesses, or the defendant may be uncovered.[8] *See Alexander v. R.D. Grier & Sons Co. Inc.,* 181 Md. 415, 419, 30 A.2d 757, 758 (1943), in which the trial court's refusal to ask "whether or not [jurors] or any of their immediate family [were assessables] in the Keystone Indemnity Exchange," where the issue at trial was the enforcement of an assessment against a subscriber by Keystone and the juror's financial interest "would theoretically incline him in favor of recovery of a verdict for the liquidator," was held to be an abuse of discretion, the question being directed at determining whether any juror was biased or prejudiced. *See also Mor-*

---

8. This Court has identified areas of mandatory inquiry: racial, ethnic and cultural bias, *Hernandez v. State,* 357 Md. 204, 232, 742 A.2d 952, 967 (1999); *Hill v. State,* 339 Md. 275, 285, 661 A.2d 1164,1169 (1995); *Bowie v. State,* 324 Md. 1, 15, 595 A.2d 448, 455 (1991), religious bias, *Casey v. Roman Catholic Archbishop,* 217 Md. 595, 606–07, 143 A.2d 627, 632 (1958), predisposition as to the use of circumstantial evidence in capital cases, *Corens v. State,* 185 Md. 561, 564, 45 A.2d 340, 343–44 (1946), and placement of undue weight on police officer credibility. *See Langley v. State,* 281 Md. 337, 349, 378 A.2d 1338, 1344 (1977). *Davis v. State,* 333 Md. 27, 36, 633 A.2d 867, 871–72 (1993), explained that these mandatory areas of inquiry involve "potential biases or predispositions that prospective jurors may hold which, if present, would hinder their ability to objectively resolve the matter before them."

*ford v. United States*, 339 U.S. 258, 70 S.Ct. 586, 94 L.Ed. 815 (1950) (finding that where panel from which the jury was selected consisted of almost entirely government employees, refusal to allow questions pertaining to possible influence of the federal loyalty oath was error). Indeed, as we held in *Bedford*, "any circumstances which may reasonably be regarded as rendering a person unfit for jury service may be made the subject of questions and a challenge for cause." 317 Md. at 671, 566 A.2d at 117, *quoting Corens v. State*, 185 Md. at 564, 45 A.2d at 343. In addition, we have also held that,

"If there is any likelihood that some prejudices in the jurors' mind which will even subconsciously affect his decision of the case, the party who may be adversely affected should be permitted questions designed to uncover that prejudice. This is particularly true with reference to the defendant in a criminal case. Otherwise, the right of trial by an impartial jury guaranteed to him ... might well be impaired.... "

*Bedford*, 317 Md. at 671, 566 A.2d at 117; *quoting Brown v. State*, 220 Md. 29, 35, 150 A.2d 895, 897–98 (1959), *quoting State v. Higgs*, 143 Conn. 138, 142, 120 A.2d 152, 154 (1956).

Contrary to the State's suggestion, the critical issues in this case are not simply whether the trial court abused its discretion in electing to ask the questions involved in the present case in compound form and to the venire at large, the form of the questions asked, or even the scope of voir dire. Nor has it to do only with the principles that underlie or drive the voir dire process. There is an issue that is much more basic and fundamental. It relates to the role of the trial judge in the jury selection process and, perhaps most important, how the principles that are the "very end and aim," *Glanzer v. Shepard*, 233 N.Y. 236, 135 N.E. 275 (1922), of the voir dire procedure are to be applied. And the issue this case presents is not new.

Although not the central issue in that case, it was a part of the debate in which this Court engaged in *Davis*. There, where the scope of the voir dire examination was at issue, this

Court recognized the proper focus of voir dire as being "on the venire person's state of mind, and whether there is some bias, prejudice, or preconception," 333 Md. at 37, 633 A.2d at 872. It also noted the necessity that the inquiry be directed toward determining "the venire person's ability to render an impartial verdict based solely on the evidence presented." *Id.* The majority of this Court, in that case, holding that it was not an abuse of discretion, upheld the trial court's refusal to ask the venire panel, in addition to the six omnibus questions it had already propounded, one further question, whether any member of the venire or a close friend or relative, was, or had been, a member of the law enforcement community. The refusal was premised on its conclusion that the inquiry "[did] not relate to cause for disqualification," *id.* at 36, 633 A.2d at 872, the Court pointing out that an affirmative answer to the question would not have established such cause. *Id.* at 36–37, 633 A.2d at 872. The majority reasoned further:

> "First, the fact that a prospective juror is or was a member of a law enforcement body does not automatically disqualify that venire person. *See Harris v. State,* 82 Md.App. 450, 470, 572 A.2d 573, 583 (trial judge did not err when he failed to strike former state trooper for cause where trooper indicated that he was able to render fair and impartial judgment despite earlier employment), *cert. denied,* 320 Md. 800, 580 A.2d 218 (1990). Likewise, the mere fact that a prospective juror is related to or associated with members of the law enforcement community does not constitute cause for disqualification. *Goldstein v. State,* 220 Md. 39, 45, 150 A.2d 900, 904 (1959); *Shifflett v. State,* 80 Md.App. 151, 156, 560 A.2d 587, 589 (1989), *aff'd on other grounds,* 319 Md. 275, 572 A.2d 167 (1990); *Baker v. State,* 3 Md.App. 251, 254, 238 A.2d 561, 564 (1968). In general, the professional, vocational, or social status of a prospective juror is not a dispositive factor establishing cause to disqualify. Rather, the proper focus is on the venire person's state of mind, and whether there is some bias, prejudice, or preconception. Short of those instances where there is a demonstrably strong correlation between the status in question and a

mental state that gives rise to cause for disqualification, mere status or acquaintance is insufficient to establish cause for disqualification of a prospective juror. The fact that a prospective juror is employed as, related to, or associated with a law enforcement officer does not establish that the prospective juror has any undue bias or prejudice that will prevent that person from fairly and impartially determining the matter before them. *See Goldstein,* 220 Md. at 44–45, 150 A.2d at 904. The inquiry must instead focus on the venire person's ability to render an impartial verdict based solely on the evidence presented."
*Id.* at 37, 633 A.2d at 872.

Although the dissenting opinion in that case disagreed, that disagreement did not relate to the principles governing jury voir dire. Rather, the majority and the dissent "part[ed] company only on the question of whether the inquiry sought to be made . . . was for the purpose of ascertaining 'the existence of cause for disqualification and for no other purpose.' " *Id.* at 57, 633 A.2d at 882 (Bell, J. dissenting), *quoting McGee v. State,* 219 Md. 53, 58, 146 A.2d 194, 196 (1959) (*quoting Adams v. State,* 200 Md. 133, 140, 88 A.2d 556, 559 (1952)). It argued that the majority misapplied the relevant principles and, indeed, misapprehended the trial court's role in the voir dire process. This Court has subsequently recognized, explicitly, what the dissent in *Davis* posited, that the impaneling of a fair and impartial jury is "[t]he task of the trial judge." *Boyd,* 341 Md. at 436, 671 A.2d at 35.

To be sure, Maryland has adopted, and continues to adhere to, limited voir dire. *See Davis,* 333 Md. at 40–46, 633 A.2d at 873–74. It is also well settled that the trial court has broad discretion in the conduct of voir dire, most especially with regard to the scope and the form of the questions propounded, *see Burch v. State,* 346 Md. 253, 293, 696 A.2d 443, 463 (1997); *Perry v. State,* 344 Md. 204, 218, 686 A.2d 274, 280 (1996); *Boyd,* 341 Md. at 436, 671 A.2d at 35; *Hill,* 339 Md. at 279, 661 A.2d at 1166; *Davis,* 333 Md. at 34, 633 A.2d at 870–71, and that it need not make any particular inquiry of the prospective jurors unless that inquiry is directed toward re-

vealing cause for disqualification. *See Burch,* 346 Md. at 293, 696 A.2d at 463; *Davis,* 333 Md. at 34–35, 633 A.2d at 871, *quoting McGee,* 219 Md. at 58–59, 146 A.2d at 196 ("Questions not directed to a specific ground for disqualification but which are speculative, inquisitorial, catechising or 'fishing', asked in the aid of deciding on peremptory challenges, may be refused in the discretion of the court, even though it would not have been error to have asked them."). As *Davis,* and now this case, demonstrate, there may be, and often is, a conflict between keeping the voir dire process limited and the goal of ferreting out cause for disqualification. This case presents a good example: the trial judge recognized the relevance of the questions, that they were designed to uncover prejudice that would, if not discovered, deny the petitioner a fair trial. Expediency and the perceived need to limit the process, however, led the court to find a way to avoid examination of each affected venire person as to the admittedly relevant matters and allow each such person to make his or her own call as to his or her qualification to serve.

The broad discretion of the trial court and the rigidity of the limited voir dire process are tempered by the importance and preeminence of the right to a fair and impartial jury and the need to ensure that one is impaneled. Thus, we have made clear that "this Court will prescribe the juror voir dire process . . . *as is necessary* . . . to uncover disqualifying bias." *Boyd,* 341 Md. at 433, 671 A.2d at 34.

Because the task of the trial judge is to impanel a fair and impartial jury and, for the achievement of that purpose, he or she has been entrusted with broad discretion in the conduct of voir dire, it is clear that it is the trial judge that controls the process: the trial judge determines the content and scope of the questions on voir dire; how voir dire will be conducted, *i.e.* whether, and when, to allow counsel to ask follow-up questions; and whether, and when, a prospective juror is dismissed for cause. It follows, therefore, that it is the trial judge that must decide whether, and when, cause for disqualification exists for any particular venire person. That is not a position occupied, or a decision to be made, by either the venire or the

individual venire persons. In short, the trial judge is the focal point in the process.

As the focal point in the process, the trial judge's "predominant function in determining juror bias involves credibility findings whose basis cannot be discerned from an appellate record." *Wainwright v. Witt*, 469 U.S. 412, 429, 105 S.Ct. 844, 855, 83 L.Ed.2d 841, 855 (1985). The Supreme Court in *Witt* noted explicitly that "excluding prospective capital sentencing jurors because of their opposition to capital punishment is no different from excluding jurors for innumerable other reasons which result in bias . . . ." *Id.* Thus, voir dire, whether in a capital case or in the more usual situation, to be meaningful, must uncover more than "the jurors" bottom line conclusions [to broad questions], which do not in themselves reveal automatically disqualifying biases as to their ability fairly and accurately to decide the case, and, indeed, which do not elucidate the bases for those conclusions . . . ." *Bowie v. State*, 324 Md. 1, 23, 595 A.2d 448, 459 (1991).

Bias is a question of fact. *See Davis*, 333 Md. at 38, 633 A.2d at 873 (*quoting Borman v. State*, 1 Md.App. 276, 279, 229 A.2d 440, 441–42 (1967))(" '[B]ias on the part of prospective jurors will never be presumed, and the challenging party bears the burden of presenting facts . . . which would give rise to a showing of actual prejudice.' "). *See Deinhardt v. State*, 29 Md.App. 391, 397–98, 348 A.2d 286, 290 (1975) (noting that if the court had permitted the cross-examination, the prosecutrix's answers may have persuaded the court that the witness was not credible). Confession by a venire person is one way of establishing bias, but it is not the only way; "the strike for cause process encompasses the situation where the motion to strike is made on the basis of information developed during the voir dire process, not simply where the prospective juror admits an inability to be fair and impartial." *Davis*, 333 Md. at 63, 633 A.2d at 885 (Bell, J. dissenting). Evidence of bias may be offered on the basis of which the trial court could find its existence as a matter of fact. Also, it is well established that, where there are similarities between the juror's experi-

ences and the facts on trial, the juror's bias may be presumed. *See Hunley v. Godinez*, 975 F.2d 316, 319 (7th Cir.1992) ("Courts have presumed bias in cases where the prospective juror has been the victim of a crime or has experienced a situation similar to the one at issue in the trial."); *Burton v. Johnson*, 948 F.2d 1150, 1154 (10th Cir.1991) (determining that bias presumed where juror who was victim of spousal abuse sat in a murder trial and the defendant's defense was battered wife syndrome); *United States v. Eubanks*, 591 F.2d 513, 517 (9th Cir.1979) (concluding that bias presumed where juror's sons were heroin users and in the case being tried defendants were charged with distributing heroin); *United States ex rel. De Vita v. McCorkle*, 248 F.2d 1, 8 (3rd Cir.1957) (finding that in a robbery case bias presumed where juror was a victim of robbery).

■ The majority opinion in *Davis* made the point, admitting an experience or an association does not automatically disqualify the venire person.[9] 333 Md. at 35, 633 A.2d at 872. That is, of course, true. Indeed, the dissenting opinion in that case admitted as much. It also is true, however, that, while not dispositive of a venire person's qualification to serve, as the dissent in *Davis* pointed out, the venire person's professional, vocational, or social status "does tend to prove bias; that a venire person has been, or is, a member of the group to which the principal witness for the State belongs is relevant to the determination of that person's partiality or bias." 333 Md. at 61, 633 A.2d at 884 (Bell, J., dissenting). The same

---

**9.** Very few voir dire questions, besides those in the areas we have identified as requiring mandatory inquiry, will be automatically disqualifying. In *Davis*, of the six questions asked, only one, whether the venire would give more or less weight to the testimony of a police officer simply because he or she is a police officer, was automatically disqualifying. *Davis v. State*, 333 Md. 27, 66–67, 633 A.2d 867, 886–87 (1993). Catch-all questions certainly are not automatically disqualifying and, indeed, ought not to be. Because, as noted in *Davis*, 333 Md. at 67, 633 A.2d at 887, such questions should require follow up questions to determine the bona fides of the reasons that may be proffered by the prospective jurors, the presence of such questions in the voir dire makes the point with regard to the ultimate decision maker in the voir dire process being the trial judge.

reasoning applies when the venire person has had certain experiences akin to those at issue in this case.

Unlike the trial judge in *Davis,* as previously noted, the trial judge in this case apparently recognized the relevance of the experiences and associations to the venire persons' qualification to serve on the jury. *Id.* Thus, rather than inquiring into the prospective juror's mind set in a vacuum, the trial judge, presumably understanding that "it is the correlation between the juror's status and his or her state of mind that is dispositive when the venire person's status [or experience] is relevant to his or her bias," *id.,* linked the question whether the venire person could be fair and impartial with the venire person's status or experience.

The trial judge's mistake was that he failed to appreciate that, should there be a challenge, he had the responsibility to decide, based upon the circumstances then existing, *i.e.* "in addition to the venire person's bottom line conclusion in that regard, as reflected in the answers he or she gives, the character and duration of the position, the venire person's demeanor, and any and all other relevant circumstances," *id.,* or, in other words, whether any of the venire persons occupying the questioned status or having the questioned experiences should be discharged for cause, or whether "a demonstrably strong correlation [exists] between the status [or experience] in question and a mental state that gives rise to cause for disqualification." *Id.* Because he did not require an answer to be given to the question as to the existence of the status or experience unless accompanied by a statement of partiality, the trial judge was precluded from discharging his responsibility, *i.e.* exercising discretion, and, at the same time, the petitioner was denied the opportunity to discover and challenge venire persons who might be biased.

The effect on the petitioner is particularly egregious: as we have seen, the party who would challenge a venire person for cause has the burden of presenting facts demonstrating the disqualification. As already pointed out, "the strike for cause process encompasses the situation where the motion to strike is made on the basis of information developed during the voir

dire process, not simply where the prospective juror admits an inability to be fair and impartial." 333 Md. at 63, 633 A.2d at 885 (Bell, J., dissenting). Without adequate voir dire, there simply can be no such showing. The ability to challenge for cause is empty indeed if no way is provided for developing or having access to relevant information. What the dissent said in *Davis* applies just as forcibly to the case sub judice:

"When the inquiries that constitute proper voir dire are restrictively interpreted, so that the voir dire process does not produce any information other than that which is automatically disqualifying, the defendant may be deprived of the right to a fair and impartial jury; he or she is completely at the mercy of the good faith, objectivity, and astuteness of the individual venirepersons. I believe that it is an abuse of discretion for the court to so restrict the voir dire process."

*Id.*

The State emphasizes the fact that much of the input with respect to the process will come from the prospective jurors themselves and often will, of necessity, represent those persons' self-assessment. It submits that prospective juror sincerity and veracity must, and should, be accepted as a matter of course by the parties and the court alike. We are not persuaded. Indeed, if the State's argument is correct, then all that is needed to, or could, be done is rely on the venire to be truthful and sincere. The dissent in *Davis* got it right when it pointed out:

"Under the rationale underlying the majority's view of voir dire, taken to its logical conclusion, all that would be necessary to empanel a legally sufficient jury is that the trial court ask the prospective jurors whether they could be fair and impartial. Only those jurors who confessed that they could not would, or could, be challenged for cause. Because the voir dire has not produced any other information, the others would be absolutely insulated from challenge."

333 Md. at 63, 633 A.2d at 885 (Bell, J. dissenting).

It is true, of course, that when, on voir dire, attitudes are the subject of the inquiry, in the usual case, other than its

observation of the venire persons, the venire person's answers will be all that the court will have. Thus, those statements necessarily will play an important role in the court's decision-making process. That, however, does not mean that the court is bound by the answers or is relieved of its responsibility to make the ultimate decision as to the effect of an answer or of a prospective juror's fitness to serve. Where a prospective juror is challenged on the basis of his or her statement of partiality (although it is difficult, of course, to conceive of a situation in which a party will undertake to dispute a venire person's confession of partiality), it is still the trial court that must resolve the matter. When the venire person's attitudes are the subject of inquiry, and a dispute arises, that becomes a factual matter—ordinarily one involving credibility as to whether the venire person actually holds that attitude—which the court is required to resolve to the same extent as if the issue involved concrete factual matters such as associations and statuses. The court simply can not rely merely on what the venire person says. Moreover, the court is well equipped to make such factual determinations and, in fact, is required to do so. *See Wainwright v. Witt,* 469 U.S. 412, 428, 105 S.Ct. 844, 854, 83 L.Ed.2d 841, 854 (1985) (noting that the voir dire strike for cause process involves credibility determinations); *Purkett v. Elem,* 514 U.S. 765, 768, 115 S.Ct. 1769, 1770, 131 L.Ed.2d 834, 843 (1995) (stating that in determining for cause strike, trial court will discard implausible or fantastic justifications).

This Court's opinion in *Bowie* is not to the contrary. There, the trial court questioned prospective jurors as follows:

"Ladies and gentlemen, the State of Maryland has filed a request before the court that if found guilty, Mr. Damon Bowie be put to death. Is there any member of the prospective jury panel who has any feelings whatsoever about such a request, and I don't care which way you feel about it, that it would interfere with your ability to fairly and truly judge this matter based only on the evidence before the court? Said another way, is there anybody in this room who has such feelings about the death penalty one

way or the other that it would affect you emotionally or to the extent that it would override your ability to judge this matter based only on the evidence brought out in the courtroom and the instructions of the court to you and the application of that evidence to law? If you have a positive response, please stand in place."

*Id.* at 16, 595 A.2d at 455.

The appellant argued, and we agreed, that the question was substantively and procedurally inadequate for failure to identify the state of mind necessary for striking a venire person for cause and to determine whether the prospective jurors were able to obey instructions given by the court in spite of their personal views. *See Witt,* 469 U.S. at 424, 105 S.Ct. at 852, 83 L.Ed.2d at 841 (1985), *quoting Adams v. Texas,* 448 U.S. 38, 45, 100 S.Ct. 2521, 2526, 65 L.Ed.2d 581, 589 (1980) ("Whether the juror's views would 'prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath.' "). We concluded:

> Where, as here, the trial court excuses prospective jurors, whether for predisposition in favor of, or against, the death penalty, on the basis of broad questions calling for the jurors' bottom line conclusions, which do not in themselves reveal automatically disqualifying biases as to their ability fairly and accurately to decide the case, and, indeed, which do not elucidate the bases for those conclusions, the trial court has not made a factual determination as contemplated by *Witt,* to which we must defer.

*Bowie* at 23–24, 595 A.2d at 459.

What we said in *Bowie* certainly does not demonstrate that the questions as proposed by the petitioner in this case, unsupplemented by the court, were substantively and procedurally inadequate. But, in any event, the petitioner does not claim that the answer to his questions would result in automatic disqualification; rather, he simply argues that he should have had the benefit of the information that the questions would elicit so that, if warranted, he could have made chal-

lenges for cause, which the trial judge would have been required to address.

By upholding a voir dire inquiry in which a venire person is required to respond only if his or her answer is in the affirmative to both parts of a question directed at discovering the venire persons' experiences and associations and their effect on that venire person's qualification to serve as a juror, and producing information only about those who respond, the holding of the Court of Special Appeals endorses a voir dire process that allows, if not requires, the individual venire person to decide his or her ability to be fair and impartial. Moreover, in those cases where the venire person has had the questioned experience or association, but believes he or she can be fair, the procedure followed in this case shifts from the trial judge to the venire responsibility to decide juror bias. Without information bearing on the relevant experiences or associations of the affected individual venire persons who were not required to respond, the court simply does not have the ability, and, therefore, is unable to evaluate whether such persons are capable of conducting themselves impartially. Moreover, the petitioner is deprived of the ability to challenge any of those persons for cause. Rather than advancing the purpose of voir dire, the form of the challenged inquiries in this case distorts and frustrates it.

JUDGMENT OF THE COURT OF SPECIAL APPEALS VACATED. CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO REVERSE THE JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE COUNTY AND REMAND THE CASE TO THAT COURT FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS IN THIS COURT AND IN THE COURT OF SPE-CIAL APPEALS TO BE PAID BY BALTIMORE COUNTY.

RAKER, Judge, dissenting, joined by Judges WILNER and HARRELL.

I respectfully dissent from the Court's holding that the trial court somehow abdicated its role and function in conducting

pretrial *voir dire* of the venire and, in so doing, committed an error requiring the reversal of Petitioner's convictions. The rationale relied upon by the majority constitutes a revision of Maryland's *voir dire* jurisprudence, and the decision today effectively overrules at least two of this Court's more recent precedents in this area of the law.[1] Most importantly, today's decision significantly circumscribes the previously broad discretion that this Court, over the course of the past century and beyond, has repeatedly and steadfastly accorded to trial courts in conducting pretrial *voir dire* of the venire.

To my mind, the true issue in this case is different in kind from the many this Court has previously been called upon to address in the context of pretrial *voir dire* in a criminal prosecution.[2] Here, the dispute does not involve the court's

---

1. See *Perry v. State*, 344 Md. 204, 686 A.2d 274 (1996); *Davis v. State*, 333 Md. 27, 633 A.2d 867 (1993).

2. The majority states that "the issue this case presents is not new." Maj. op. at 11. In truth, the issue incorrectly given prominence by today's majority, namely the supposed "misapprehen[sion of] the trial court's role in the *voir dire* process," maj. op. at 13, has been raised in a number of prior opinions *dissenting* from decisions made and positions taken by this Court with respect to Maryland trial courts' execution of pretrial *voir dire*. See *Davis v. State*, 333 Md. 27, 633 A.2d 867 (1993). The dissent said as follows:

 Under Maryland law it is clear that the focal point of *voir dire* is the trial judge. It is the trial judge that has responsibility for regulating and conducting *voir dire*. It is the trial judge that controls the process; he or she determines: what questions to ask on *voir dire;* whether, and when, to allow counsel to ask follow up questions; and whether, and when, a prospective juror is dismissed for cause. It follows, therefore, that it is the trial judge that must decide whether, and when, cause for disqualification exists as to any particular venireperson. Neither the venire nor the individual venirepersons occupies such an important position.

 *Id.* at 59, 633 A.2d at 883 (Bell, J., dissenting) (quoted in *Oken v. State*, 343 Md. 256, 309–10, 681 A.2d 30, 56 (1996) (Bell, J., dissenting); *Evans v. State*, 333 Md. 660, 700–01, 637 A.2d 117, 137 (1994) (Bell, J., dissenting)).

 Nonetheless, the majority in each of those cases quite obviously did not agree with, and thus did not incorporate or even directly address, the dissent's contention that the trial court must play a more active role and take a more investigative posture in the criminal pretrial *voir dire* process and must act upon such when requested to by the defendant.

refusal to propound a defense-requested question or topic to the venire nor does it concern the content of a question asked of prospective jurors. Instead, the error charged to the trial court in the present case is simply one of improper syntax. According to the question presented within the petition for certiorari granted by this Court, the trial court is alleged to have erred by making "the jurors, rather than the trial judge, the final arbiter of impartiality."[3] Yet this supposed error arises from the court's posing certain defense-initiated topics in a collection of extremely broad compound interrogatories to the jury pool at large instead of asking the series of successive, simple questions proposed by the defendant, affirmative answers to which would be followed up with more specific questions posed to pertinent members of the venire, presumably on an individual basis.

The majority has effectively taken Petitioner's bait, *see Total Audio–Visual Systems, Inc. v. Dep't of Labor, Licensing and Regulation*, 360 Md. 387, 758 A.2d 124 (2000)(dissenting opinion fn. 1), based upon a series of dissents, and has now transformed the law into what was not previously the law of Maryland, thus allowing a non-majority principle to triumph over past majority decisions of this Court. Namely, as I interpret the majority to be declaring, trial courts must now embrace a more full-fledged control over the *voir dire* process and must investigate more thoroughly certain answers given by prospective jurors. Furthermore, the broad discretion previously accorded to trial judges in conducting the *voir dire* procedure has been significantly narrowed. Lastly, these changes undoubtedly come at the expense of a more stream-

---

Although the issue is thus admittedly not unheard of, it certainly has not been heretofore approached as an issue worthy of more than passing consideration by a majority of this Court, let alone employed as the cause for overturning a criminal defendant's conviction(s).

Finally, what is undeniably quite novel about the instant case, as I shall discuss later, is the significant restriction that today's majority judgment portends, indeed effects upon, the broad discretion that trial courts in Maryland, up until now, have enjoyed in performing their role within the *voir dire* process.

**3.** *See supra* note 1 of the majority opinion.

lined, limited, and timely *voir dire* process that, up until today, was deemed preferable and indeed was explicitly favored by this Court. *See Davis v. State*, 333 Md. 27, 38–47, 633 A.2d 867, 873–77 (1993) (explaining and reconfirming this Court's century-long preference for and adherence to limited pretrial *voir dire* procedure).

In concert with this Court's unwavering precedents in this area, I would hold that the trial judge did not abuse the broad discretion he enjoys in presiding over pretrial *voir dire* simply by electing to ask the questions involved in the present case in compound form and to the venire at large, rather than in separate parts and, presumably, to prospective jurors individually,[4] as the defense preferred that they be asked. I would therefore affirm the judgment of the Court of Special Appeals which in turn affirmed the judgment in the Circuit Court for Baltimore County.

## I.

Petitioner, Ricky Dingle, was tried by jury along with two co-defendants, Michael Hawkins and Gail Evans, in the Circuit Court for Baltimore County. He was convicted of two counts of robbery with a dangerous and deadly weapon, one count of attempted robbery with a dangerous and deadly weapon, and one count of use of a handgun in the commission of a crime of violence. I concur with the majority that the underlying evidence of these crimes, as produced at trial, is not in dispute in the present appeal and that the State's allegations are not

---

4. It is not clear from Petitioner's brief, or for that matter, from the majority opinion, whether at least some of the questions involved in this case must be inquired of members of the venire on an individual basis in order that the trial court fulfill its role as the "arbiter of impartiality." For his part, however, Petitioner conceded during oral argument that he was indeed insisting on a rule that some questions, not specifically identified or even necessarily identifiable, must be posed to the jury pool on an individual basis in order to enable the proponent of the question to ferret out cause(s) for disqualification of certain prospective jurors. Such a rule would be unprecedented and could result in great disruption and elongation of pretrial *voir dire* as it is currently conducted in Maryland.

directly relevant or absolutely necessary to determining the legal issue presented. In following the majority's lead, I shall not incorporate any evidentiary matter into the body of this opinion.[5]

---

5. Nevertheless, I shall provide some factual background as it bears certain relevance, first, to the content of the questions in dispute that Petitioner requested the trial court to present to the venire; second, to Petitioner's reasons for and purpose in making such requests; and, finally, and undoubtedly, to the court's decision to put those questions, in any manner, to the prospective jurors, even though, as I shall discuss later, not one of the questions posed by Petitioner was actually required to be asked.

The parties have stipulated that the factual recitation provided by the Court of Special Appeals in its unreported opinion in the present case accurately summarizes the evidence produced at trial. That recitation stated as follows:

The Cockeysville branch of the Susquehanna Bank was robbed on October 2, 1997. Bank teller Stacy Hooker testified at trial that two men wearing sunglasses and masks came into the bank. One of the men had a gun. Hooker and another teller, Leesa Shepard, gave them four or five thousand dollars in a bag that contained dye packs and "bait money," with recorded serial numbers. Hooker identified a photograph of the money bag given to the men, noting only one difference in its appearance—the presence of dye. She also identified photographs of sunglasses with dye on them, a mask, and a gun and stopwatch held by the shorter of the two robbers. When the robbers left, Hooker looked out the window. A gray car drove by and she tried to get the license plate number. She called the police and told them the license contained "CCL6."

Assistant Manager Lena Maenner also witnessed the robbery. At first, she thought the robbers were Brinks employees because they appeared to her to be wearing uniforms. Maenner testified that one robber asked her to open the vault. He was impatient and pushed her repeatedly as she tried to set the combination to the vault. The robber left her in the vault. Maenner, too, saw the shorter of the robbers holding a stopwatch and a "little hand-held gun." She also identified the photographs.

John Eubank, a bank customer, drove into the parking lot just as the robbery was beginning. He saw a masked man go into the bank and another man follow him within a few seconds. Eubank drove from the bank parking lot to an adjacent lot where he could watch what was occurring. He called the police and gave the 911 operator what he thought was the license plate of the car in which the two men left the bank, CZE 623, then followed them. From a distance, he saw their car stop. The men got out of the car and took off some of their clothes. Eubank could see that they had bags in their hands. The men disappeared in the direction of some nearby houses. Eubank thought they had gone into one of the houses, but they came

running back "seconds later." The men got into two separate cars and Eubank continued to follow and describe what he was seeing to the 911 operator. He testified that one of the two cars had a female driver. Eubank lost sight of the cars when he ran into a construction backup on Interstate 83. After losing track of the cars, he was met by Detective Alan Myer, who took him to a nearby street where he identified the woman driver. He was unable to identify [Petitioner], who was in the car with her.

Suzanne Rank lived a short distance from the bank. She testified that she was taking her puppy out when she saw two men rushing to get out of a gray car. The men were "frantically grabbing items out of their respective sides of the car. One man was taking something off of his head." Rank went back into her house and phoned police. When they arrived, she watched them find a bag with money and a gun in the bushes beside her house.

Detective Wayne Ritter was on patrol in the area when a dispatcher broadcast the news about the bank robber. He responded to Rank's street, where he saw a gray Honda Accord with the licence CCL 623. The car was empty, but its engine was running and the driver's side door was open. Corporal Richard Delea also went to the Rank home. In the bushes, he found a bag, a mask, and a uniform style hat that said "Security." He testified that the dye packs had exploded and their odor was still noticeable. Police technician Katherine Schene testified that she, too, noticed the smell of the dye packs, which made her eyes tear. Schene also testified that she recovered from the bush several bags, a mask, a stopwatch, and a jacket in which she found the gun, containing five live cartridges. Inside a duffel bag, she found sunglasses, a lens, and a piece of a latex glove.

Officer Scott DeFelice testified that he heard the radio dispatch and drove to the area of Interstate 83 and Ruxton Road, where he stopped a car matching the description broadcast. It was he who transported [Petitioner] to the police station. On the ride to headquarters, [Petitioner] blurted out that he had not robbed the bank, although DeFelice had said nothing about the crime. DeFelice noticed a red mark on the collar of [Petitioner]'s shirt.

At the police station, Detective Joseph Folio took [Petitioner]'s shirt and gave him a blue Detention Center Uniform, bearing the words "Baltimore County," to wear. A photograph of [Petitioner] in that uniform was introduced into evidence, over objection. [Petitioner]'s shirt was given to FBI chemist Patrick Money, who testified that he found a faint pink stain near the collar. The stain measured approximately one half inch by one half inch and it tested positive for a chemical known as MAAQ and a particular type of tear gas, indicating that the stain was produced by a bank dye pack. Rooney testified that there were two other uses for MAAQ: It is contained in Army smoke signals and is "baked into" automobile taillights, creating their red color. The automobile taillights contain MAAQ only and not tear gas.

Other witnesses established ownership of the gray Honda and the gun, which was stipulated to be in operating condition. Dennis Alsol testified that he had left the Honda on a Baltimore parking lot the month before the robbery, and it had vanished. He did not know

It cannot be denied, on the other hand, that the procedural facts relating to the trial court's execution of *voir dire* lie at the true heart of Petitioner's appeal, facts which likewise are not in dispute. Prior to trial, both Petitioner and the State filed written requests for *voir dire*. Following discussion with the parties, the trial judge approved the substance of several questions requested by Petitioner but announced, over defense counsel's objection, that he would ask some of the questions in a two-part format. The judge explained that for certain topics of concern proffered by the defense, dealing with a variety of experiences or associations possibly pertaining to individual members of the venire, he would ask each question proposed yet immediately follow it up with a suffix suggested by the prosecution. Specifically, the court would ask whether a certain experience or association pertained to any prospective juror and, "if the answer to that question is yes, . . . would it affect the person's ability to be fair and impartial?" Members of the venire would be instructed to identify themselves upon the asking of each compound question if and only if their responses were affirmative to *both* parts thereof.[6]

---

[Petitioner] or any of the other defendants on trial with him. John Connor identified a photograph of the gun as his own, registered weapon. He did not know it was missing until police came to question him, nor did he recall giving it to anyone. He did not know [Petitioner] or recognize his photograph when it was shown to him by police.

6. Prior to asking the series of compound questions at issue in this case, the Circuit Court instructed the members of the venire as follows:

> I'm going to ask you a number of two-part questions at this time. You should only stand if your answer is yes to both parts of the question. If your answer is no to either part of the question, then you should not stand. So once again, only stand if your answer is yes to both parts of the question.

For purposes of my discussion, I shall use the proper syntactical designations for the two parts of the compound questions utilized by the trial court. The first part of each compound question, addressing the potential existence of a specified condition, is syntactically known as the "protasis"—or the conditional clause. The second part, addressing the potential effect of the specified condition, if existent, is syntactically known as the "apodosis"—or the conclusive clause. In the instant case, the apodosis in each question remained constant, seeking to establish whether the specified condition would render a member of the

As indicated by the majority, these compound questions, asked of the venire at large, were directed toward seven different subject areas: (1) experience as a victim of crime, (2) experience as an accused or convicted person, (3) experience as a witness in a criminal case, (4) experience as a petit juror in a criminal case or as a member of a grand jury, (5) membership in any victims' rights group, (6) connection with the legal profession, and (7) association with law enforcement.[7] Defense counsel excepted to the trial court's use of two-part questions for these subject areas on two grounds.

First, Petitioner asserted, the compounding of the questions would (and did) result in a trial jury impaneled in part by a process of self-assessment, whereby the venirepersons themselves were allowed, by means of a "unilateral decision," to determine their fitness for service on the jury. Second, according to defense counsel, the two-part questions would (and did) deprive Petitioner of critical information relevant to

venire affected thereby unfit to be a juror on account of his or her inability to return a fair and impartial verdict. The protases were variable, relative to each particular experience or association of concern to Petitioner (the different subject matters of which are outlined in the text immediately following this footnote). For similar approach, see *Davis v. State,* 93 Md.App. 89, 121, 611 A.2d 1008, 1024 (1992). In essence, the compound format utilized by the court for the questions at issue here resembles a typical, single conditional sentence of the pattern, "If you, or a close friend or relative, are or have ever been [*e.g.*, the victim of a crime], would that [experience with victimization] render you unable to return a fair and impartial verdict in this case?" The legal analysis is the same whether a trial court were to use a single, conditional sentence following this pattern or the dual interrogative sentences used by the trial court in the present case.

7. For the actual compound questions relative to these subject areas that the Circuit Court posed to the venire, see *supra* note 4 of the majority opinion. In addition, the trial court posed numerous other questions to the prospective jurors in a variety of formats different from the so-called two-part questions directed toward these identified subject areas. Such questions were sometimes propounded to the jury pool at large and at other times to individual members of the venire. The dispute in the present appeal, however, involves only those questions posed by the court in the two-part format with regard to the seven subject areas identified above. In addition, the proposed questions were extremely broad, addressed not only to the prospective jurors' life experiences and views, but also to the views of any relatives or friends.

challenges for cause: the factor or factors prompting a potential juror's "Yes" response to the protasis would (and did) remain undisclosed if his or her answer to apodosis was "No." Consequently, argues Petitioner, because the information underlying some jurors' affirmative responses to the protasis potentially contained grounds for disqualification for cause, he was unfairly hampered in utilizing the *voir dire* process to ensure himself a fair and impartial jury.

The trial court overruled Petitioner's objection, stating as follows:

> The court has asked the questions which the defense has presented in [the] two-part format I described on many occasions, and on many occasions we've had people stand up in response to those questions and say, Yes, Judge, I can't be fair and impartial, so it would appear to the court that the only reason for calling up the venire men here to the bench for individual *voir dire* is to allow the defense to develop more information which the defense intends to use in exercising its peremptory challenges, and therefore, the court declines to do so.

The Circuit Court then proceeded to ask the questions related to the aforementioned subject areas in compound form and to the venire at large. As the majority has explained, the colloquy that took place between the court and prospective jurors relative to their experience with crime victimization illustrates a pattern similar to the colloquy engaged in for each of the other compound-questioned subjects. On motion of the State, Petitioner, or one of the co-defendants, the trial court struck for cause individuals who had responded affirmatively that their experience as a victim of crime would interfere with their ability to be fair and impartial jurors at Petitioner's trial, with the exception of Tom Marshall, number 643, who was not reached prior to the jury's impanelment.[8] As mentioned earlier, the jury convicted Petitioner of two

---

8. The record reveals that similar results occurred with respect to the other subject areas addressed by the trial court's compound format.

armed robberies, an attempted armed robbery, and the use of a handgun in the commission of a crime of violence.

Petitioner filed a timely appeal to the Court of Special Appeals, which affirmed his convictions in a unanimous, unreported opinion. This Court granted Petitioner's petition for writ of certiorari to answer the following question:

> Did the lower courts err in approving, over defense objection, a method of *voir dire* (a two-part question, respond only if your answer is yes to both parts) which made the jurors, rather than the trial judge, the final arbiter of impartiality and prevented defense counsel from exercise of his challenges for cause?

I would answer that question in the negative, understanding again that it is based on premises that this Court has repeatedly rejected in a multitude of cases.

## II.

Petitioner's principal objection is that the trial judge erred not in unfairly restricting the scope of the *voir dire*, but in the form of the questions posed to the venire. He argues that "a silent self-assessment, without disclosing the specifics of the prior experience, does not give counsel the information necessary for a challenge for cause, nor does it give the trial judge a basis upon which to decide a challenge for cause, thus undermining the very purpose of *voir dire*."

In Maryland, the overall purpose of *voir dire* in a criminal case is to ensure that a fair and impartial jury will sit in judgment of the defendant, as guaranteed by the Sixth Amendment to the United States Constitution and Article XXI of the Maryland Declaration of Rights. *See Boyd v. State*, 341 Md. 431, 435, 671 A.2d 33, 35 (1996). Yet only occasionally has the right of a criminal defendant to trial by an impartial jury been interpreted to impose a particular requirement upon the scope and format of the *voir dire* process as a matter of constitutional law. *See, e.g., Turner v. Murray*, 476 U.S. 28, 36–37, 106 S.Ct. 1683, 90 L.Ed.2d 27 (1986) (holding that "a capital defendant accused of an interracial crime is entitled to

have prospective jurors informed of the race of the victim and questioned on the issue of racial bias"). *See also Bowie v. State,* 324 Md. 1, 12, 595 A.2d 448, 453 (1991) (stating that "[s]imply because, in a non-capital case, the victim of the crime is white and the defendant is African–American does not *constitutionally* require that questions into the venirepersons' racial prejudice must be propounded on *voir dire* ") (citing *Ristaino v. Ross,* 424 U.S. 589, 594–95, 96 S.Ct. 1017, 47 L.Ed.2d 258 (1976) (footnote omitted)). As Judge Rodowsky, writing for a unanimous Court, recently summarized:

> [U]nder current federal law, a defendant has a Fourteenth Amendment right to have a trial court propound a requested *voir dire* question, specifically directed to uncovering racial bias, if the case involves special circumstances, of the sort in *Ham* [*v. South Carolina,* 409 U.S. 524, 526–27, 93 S.Ct. 848, 850, 35 L.Ed.2d 46], in which "racial issues [are] 'inextricably bound up with the conduct of the trial.' " *Rosales[–]Lopez[ v. U.S.,* 451 U.S. [182] at 189, 101 S.Ct. [1629] at 1635, 68 L.Ed.2d [22] at 29] (quoting *Ristaino,* 424 U.S. at 597, 96 S.Ct. at 1021, 47 L.Ed.2d at 264). Moreover, a defendant has a nonconstitutional right in a federal criminal trial to have such a question propounded when there is a " 'reasonable possibility' that racial prejudice would influence the jury." *Id.* at 192, 101 S.Ct. at 1636, 68 L.Ed.2d at 31.

*Hernandez v. State,* 357 Md. 204, 214–15, 742 A.2d 952, 957 (1999). In place of a constitutionally based regulation of the *voir dire* process, it has been left generally to the individual states to determine how *voir dire* is to be conducted depending upon each sovereign's weighing of the various and sometimes competing interests at stake. *See Mu'Min v. Virginia,* 500 U.S. 415, 431, 111 S.Ct. 1899, 114 L.Ed.2d 493 (1991) (stating that although specific subjects must be covered in *voir dire,* depending on the facts of the case, the Court would not specify any particulars by which this must be done). Thus, this Court stated in *Davis v. State,* 333 Md. 27, 40, 633 A.2d 867, 873 (1993):

In the absence of a rigid constitutional requirement concerning the scope of *voir dire*, states have had to make a policy determination with respect to which method of *voir dire* best fits the needs of their justice system. In setting this policy, courts and legislatures have had to balance the parties' desires for extensive *voir dire* and the justice system's obligation to provide litigants with both an impartial as well as efficient method of administering justice.

Furthermore, this Court has made clear on numerous occasions where Maryland falls in that balance, deliberately choosing a significantly limited *voir dire* practice. *See, e.g., Davis,* 333 Md. at 40–46, 633 A.2d at 873–78; *Bowie,* 324 Md. 1, 595 A.2d 448; *Bedford v. State,* 317 Md. 659, 566 A.2d 111 (1989); *Couser v. State,* 282 Md. 125, 383 A.2d 389 (1978); *Langley v. State,* 281 Md. 337, 378 A.2d 1338 (1977); *Kujawa v. Baltimore Trans. Co.,* 224 Md. 195, 167 A.2d 96 (1961); *McGee v. State,* 219 Md. 53, 146 A.2d 194 (1959); *Corens v. State,* 185 Md. 561, 45 A.2d 340 (1946); *Whittemore v. State,* 151 Md. 309, 134 A. 322 (1926); *Handy v. State,* 101 Md. 39, 60 A. 452 (1905). Writing for a unanimous court in *Boyd,* 341 Md. 431, 671 A.2d 33, Judge Karwacki succinctly stated the position that this Court has taken and from which we have not wavered: "Under the common law of this State this Court will prescribe the juror *voir dire* process only as much *as is necessary* to establish that jurors meet minimum qualifications for service and to uncover disqualifying bias." *Id.* at 433, 671 A.2d at 34.

Reflective of the restrictive role of *voir dire* in this State for the major part of this century, there exist two primary principles to guide a Maryland trial court's execution of *voir dire*. The first is that the "scope of *voir dire* and the form of the questions propounded rest firmly within the discretion of the trial judge." *Perry v. State,* 344 Md. 204, 218, 686 A.2d 274, 280 (1996) (citing *Boyd v. State,* 341 Md. 431, 436, 671 A.2d 33, 35 (1996); *Davis v. State,* 333 Md. 27, 34, 633 A.2d 867, 870–71 (1993); *Casey v. Roman Catholic Arch.,* 217 Md. 595, 605, 143 A.2d 627, 631 (1958)). *See Burch v. State,* 346 Md. 253, 293, 696 A.2d 443, 463 (1997); *Hill v. State,* 339 Md.

275, 279, 661 A.2d 1164, 1166 (1995). This view is consistent with that of most other States. *See, e.g., Cook v. State,* 542 So.2d 964, 969 (Fla.1989) (observing that "[t]here is hardly any area of the law in which the trial judge is given more discretion than in ruling on challenges of jurors for cause").

The second fundamental principle of *voir dire* in Maryland is that "the sole purpose for the inquiry is to establish cause for disqualification." *Burch,* 346 Md. at 293, 696 A.2d at 463. " 'Questions not directed to a specific ground for disqualification but which are speculative, inquisitorial, catechising or "fishing," asked in the aid of deciding on peremptory challenges, may be refused in the discretion of the court, even though it would not have been error to have asked them.' " *Davis,* 333 Md. at 34–35, 38, 633 A.2d at 871, 872 (quoting *McGee,* 219 Md. at 58–59, 146 A.2d at 196) (quoted in *Burch,* 346 Md. at 293, 696 A.2d at 463).

In the same vein, this Court has stated repeatedly:

> Undergirding the *voir dire* procedure and, hence, informing the trial court's exercise of discretion regarding the conduct of the *voir dire,* is a single, primary, and overriding principle or purpose: to ascertain the existence of cause for disqualification.... Thus, the purpose of the *voir dire* examination is to exclude from the venire those potential jurors for whom *there exists cause for disqualification,* so that the jury that remains is capable of deciding the matter before it based solely upon the facts presented, uninfluenced by any extraneous considerations.

*Hill v. State,* 339 Md. 275, 279, 661 A.2d 1164, 1166 (1995) (emphasis added) (citations, internal quotation marks, and alteration omitted) (quoted in *Boyd,* 341 Md. at 435, 671 A.2d at 35; *Perry,* 344 Md. at 218, 686 A.2d at 280). In sum, the trial court enjoys broad discretion in conducting *voir dire,* most notably with regard to the scope and the form of the questions propounded, and any particular inquiry need not be made to prospective jurors unless it is directed toward revealing cause for disqualification.

It is true, of course, that, despite the restrictive nature of *voir dire* under this State's common law and despite the ample discretion granted to trial courts in conducting such, there does exist a mandatory scope of *voir dire* in Maryland, extending

> to those areas of inquiry reasonably likely to reveal cause for disqualification. There are two areas of inquiry that may uncover cause for disqualification: (1) an examination to determine whether prospective jurors meet the minimum statutory qualifications for jury service, *see* Maryland Code (1974, 1989 Repl.Vol., 1992 Cum.Supp.), Courts & Judicial Proceedings Article, § 8–207; or (2) an examination of a juror ... conducted strictly within the right to discover the state of mind of the juror in respect to the matter in hand or any collateral matter reasonably liable to unduly influence him.

*Davis*, 333 Md. at 35–36, 633 A.2d at 871 (citations to cases, internal quotation marks, and footnote omitted). This Court has since clarified the limited, mandatory scope of *voir dire* in this State as follows:

> In other words, we have held that the well-settled "right" to examine potential jurors, inherent in the constitutional right to a fair trial and an impartial jury, translates into a defendant's right to have certain questions propounded to the jurors where the proposed questions "concern a specific cause for disqualification."

*Boyd*, 341 Md. at 436, 671 A.2d at 36 (quoting *Hill*, 339 Md. at 280, 661 A.2d at 1166).

Furthermore, while crafting a list that is not necessarily exhaustive, this Court has identified four specific areas of possible bias or partiality which are subject to mandatory inquiry on *voir dire*, if relevant to the case at hand and requested by one of the parties. These areas of mandatory inquiry include: racial, ethnic or cultural bias; *see Hernandez v. State*, 357 Md. 204, 232, 742 A.2d 952, 967 (1999); *Hill v. State*, 339 Md. 275, 285, 661 A.2d 1164, 1169 (1995); and *Bowie v. State*, 324 Md. 1, 15, 595 A.2d 448, 455 (1991) (each holding

that trial judge erred in failing during *voir dire*, after being requested by defendant, to inquire into prospective jurors' possible racial or ethnic bias); religious bias; *see Casey v. Roman Catholic Arch.*, 217 Md. 595, 606–07, 143 A.2d 627, 632 (1958) (ruling that trial judge erred in failing to inquire of prospective jurors about religious bias); an unwillingness to convict a defendant of a capital crime; *see Corens*, 185 Md. at 564, 45 A.2d at 343–44 (holding that State has right to challenge prospective juror for cause based upon juror's unwillingness to convict founded upon circumstantial evidence in death penalty case); and the placement of undue weight upon police testimony; *see Langley*, 281 Md. at 349, 378 A.2d at 1344 (determining that where principal part of State's case hinges upon credibility of police officer's testimony, court must ask whether prospective juror would give more weight to police officer's testimony solely because of his or her official status). Quite importantly, the reason that these areas are subjected to mandatory inquiry on *voir dire* is that they "entail potential biases or predispositions that prospective jurors may hold which, if present, would hinder their ability to objectively resolve the matter before them." *Davis*, 333 Md. at 36, 633 A.2d at 872.

Yet even for these "mandatory" subject areas, "neither a specific form of question nor procedure is required; it is only necessary that the essence of the information sought to be elicited is obtained." *Bowie v. State*, 324 Md. 1, 13, 595 A.2d 448, 453–54 (1991). Similarly, questions on *voir dire* ordinarily need not be posed to prospective jurors on an individual basis nor in a sequestered manner, but may be presented to the venire at large.[9] The trial court's unassailed and, indeed,

---

**9.** It may be inferred from this Court's cases pertaining to *voir dire* in a capital sentencing before a jury, in concert with the relevant jurisprudence of the United States Supreme Court, that the presiding judge may be required to inquire individually of prospective jurors as to any potential disqualifying predisposition regarding the death penalty. For example, if a member of the venire for a capital crime should answer affirmatively to holding a predisposition either in favor of or against the death penalty, it necessarily becomes incumbent upon the trial court to delve more deeply into what prompted that individual's affirmative

**36**

unassailable investigation into subject areas (by means of non-compound questions, *i.e.*, questions lacking the court's fore-chosen apodosis) that *on their own* would reveal cause for disqualification indicates that the trial judge understood quite well what his responsibilities were and what attendant limitations existed with respect to his discretion in conducting the *voir dire* of the venire prior to Petitioner's trial.

For example, the Circuit Court asked the venire as a whole the following question:

> Is there any prospective juror who would give more or less weight to the testimony of a law-enforcement officer merely because the witness was a law-enforcement officer? That's a one-part question. If you were to treat a police officer's testimony differently than any other witness' testimony merely because the witness was a police officer, please stand.

response, in order that the court may establish on the record a sufficient factual basis for sustaining or denying a subsequent strike for cause of that prospective juror. *See Bowie v. State*, 324 Md. 1, 595 A.2d 448 (1991), in which this Court held that:

> [where] the trial court excuses prospective jurors, whether for predisposition in favor of, or against, the death penalty, on the basis of broad questions calling for the jurors' bottom line conclusions, which do not in themselves reveal automatically disqualifying biases as to their ability fairly and accurately to decide the case, and, indeed, which do not elucidate the bases for those conclusions, the trial court has not made a factual determination as contemplated by *[Wainwright v.] Witt,*[ 469 U.S. 412, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985) ], to which we must defer.

*Id.* at 23–24, 595 A.2d at 459 (footnote omitted). *See also Adams v. Texas*, 448 U.S. 38, 100 S.Ct. 2521, 65 L.Ed.2d 581 (1980); *Witherspoon v. Illinois*, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968); *Hunt v. State*, 321 Md. 387, 583 A.2d 218 (1990); *Grandison v. State*, 305 Md. 685, 506 A.2d 580 (1986). The same might also be said to govern *voir dire* in cases involving extensive pre-trial publicity. *See Veney v. State*, 251 Md. 182, 190–97, 246 A.2d 568, 573–76 (1968), *cert. denied*, 394 U.S. 948, 89 S.Ct. 1284, 22 L.Ed.2d 482 (1969); *Seidman v. State*, 230. Md. 305, 323–25, 187 A.2d 109, 120–21 (1962), *cert. denied*, 374 U.S. 807, 83 S.Ct. 1696, 10 L.Ed.2d 1031 (1963). Nonetheless, inasmuch as this Court has consistently left the particulars of the *voir dire* process to the sound discretion of the trial court, generally we have not required that questions be posed to venirepersons on an individual basis.

No member of the venire answered this question affirmatively or stood up in response. In another instance, the trial court asked anyone in the jury pool to stand who either held an account with Susquehanna Bank or conducted business with the institution. To the four individuals who stood up in response, the court asked a second question as to whether such relationship would "interfere with your ability to be fair and impartial in this case." All four prospective jurors answered "No" to the second question.[10]

Most telling of the majority's departure from the long-standing tradition of a limited *voir dire* process, and the grant of wide discretion to the trial court in conducting such, is that the Circuit Court was not required to ask a single one of the questions or subject areas proposed by Petitioner. Indeed, an earlier decision by this Court is on all fours with respect to one of Petitioner's questions, specifically, "Is there any member of the jury panel including your parents, children, sibling, spouse, or other close relation with you who is or has been in the past, or is friendly with, associated with, or related to anyone in the State's Attorney's Office, Police Department, or any law enforcement agency—federal, state or local?"

In *Davis v. State*, 333 Md. 27, 633 A.2d 867 (1993), this Court held that the trial court did not abuse its discretion by refusing to put to the venire the defense-requested question "whether anyone on the jury has been a member or is a member of the law enforcement community or whether they have a close relative or friend who is such a member." *id.* at 33, 633 A.2d at 870 (internal quotation marks and ellipsis omitted). This Court reasoned as follows:

> [The] proposed voir dire inquiry does not relate to cause for disqualification. [The Defendant] merely sought to discover whether any prospective juror was either a law enforcement officer or was related to or associated with any law enforcement officers. Assuming that the court would have allowed such an inquiry, an affirmative answer would

---

**10.** Petitioner has not in any way challenged the Circuit Court's *voir dire* inquiry into these two subject areas. *See supra* note 7.

not have established cause for disqualification. First, the fact that a prospective juror is or was a member of a law enforcement body does not automatically disqualify that venire person. Likewise, the mere fact that a prospective juror is related to or associated with members of the law enforcement community does not constitute cause for disqualification. In general, the professional, vocational, or social status of a prospective juror is not a dispositive factor establishing cause to disqualify. Rather, the proper focus is on the venire person's state of mind, and whether there is some bias, prejudice, or preconception. Short of those instances where there is a demonstrably strong correlation between the status in question and a mental state that gives rise to cause for disqualification, mere status or acquaintance is insufficient to establish cause for disqualification of a prospective juror. The fact that a prospective juror is employed as, related to, or associated with a law enforcement officer does not establish that the prospective juror has any undue bias or prejudice that will prevent that person from fairly and impartially determining the matter before them. The inquiry must instead focus on the venire person's ability to render an impartial verdict based solely on the evidence presented.

*Id.* at 36–37, 633 A.2d at 872 (citations omitted). By parity of this Court's reasoning in *Davis,* because each of the other subject areas of concern to Petitioner was not required to be inquired into, the trial court in the present case would not have abused its discretion had it simply refused to ask the questions raised by Petitioner, as raised by Petitioner.

Again, it bears repeating that the reason Petitioner's proposed subject areas were not required matters for *voir dire* inquiry is that none of them, alone or as presented by Petitioner to the trial court, would directly reveal a disqualifying cause for excusing a member of the venire from the jury panel. What this Court emphasized in *Davis* is of no less force with respect to the seven questions at issue in the present case: experiences such as whether a prospective juror, his or her family member or close friend associated with

members of a law enforcement agency, has been a victim of crime, has been accused of committing a crime, belongs to a victims' rights group, attended law school, has sat as a juror in a criminal case or has ever been a witness in a criminal case, would not in and of themselves be grounds for disqualification for cause.[11] Yet the majority has ignored, and thus overruled *sub silentio*, our holding in *Davis*, that "the trial judge did not abuse his discretion in refusing to ask a question not addressing a potential ground for disqualification. Although the trial judge possessed the discretion to allow Davis's proposed line of inquiry, he was not required to do so." *Id.* at 38, 633 A.2d at 873.

Even more paradoxically, the majority has today made it the law that a Maryland trial court necessarily abuses its broad discretion in the *voir dire* process by inquiring into *non-compulsory* subject areas through the use of compound questions, that is, through the appendage of a second clause asking, "[I]f the answer to [the defense-proposed] question is yes, ... would it affect the [prospective juror]'s ability to be fair and impartial?" or, stated more succinctly, by adding to a *non-required* question proposed by the defense a qualifier expressly designed to identify cause for disqualification.

Perhaps most evident of today's abandonment of decades of *voir dire* law in general, and of its overruling of *Davis* in particular, again, a case that expressly reconfirmed this Court's adherence to a limited *voir dire* practice and to the broad discretion granted to trial courts in conducting *voir dire*, as well as to the accompanying deference to be paid by appellate courts sitting in review of such, is that the majority's references to this Court's decision in *Davis* are directed in large part to the *dissenting* opinion, rather than to the majority in that case. *See* maj. op. at 15, 17, 18, 19. Moreover, to the extent that Petitioner argues and the majority concludes

---

11. Standing in direct contrast to the seven subject areas sought by Petitioner, for example, would be any request that the court inquire as to prospective jurors' racial, ethnic, or religious bias, the mere existence of which would be cause for removal of any member of the venire harboring such.

that successive, non-compound questions are preferable and, indeed, by virtue of today's decision, are compulsory, it runs afoul of this Court's *rejection* in *Davis* of assertions in that case that "[w]hile an affirmative answer to the proposed question may not, as a matter of law, result in disqualification of the prospective juror for cause, the answer, by itself or together with the juror's manner and demeanor, may persuade the trial court, in the exercise of its discretion, to excuse the juror for cause" and that "such follow-up questioning may reveal facts, predilections, or unacknowledged prejudices." *Id.* at 38, 633 A.2d at 872 (internal quotation marks omitted) (alteration in *Davis* opinion). As this Court explained:

> [Such an] approach to *voir dire* ... finds no support in the law of Maryland. [Petitioner] suggests that a party be allowed to incrementally question prospective jurors in a piecemeal fashion until the party can uncover grounds for a challenge for cause. We see no difference between this approach and the practice in some other states that permit parties to use *voir dire* as a means to more effectively exercise peremptory challenges—a practice that this Court has long since rejected. Where parties do not direct their questions to grounds for disqualification but such questions are "speculative, inquisitorial, catechising or 'fishing', asked in aid of deciding on peremptory challenges," a trial judge has the discretion to refuse to ask them.

*Id.*, 633 A.2d at 872–73 (quoting *McGee v. State*, 219 Md. 53, 58–59, 146 A.2d 194, 196 (1959)).

The trial court's questions were not only proper as asked, but had they been asked in the singular format proposed by Petitioner, unless followed up with more specific interrogation, the questions would have failed to fulfill their purported goal. In other words, the singular questions posed by Petitioner, each revamped into the protases of the court's compound formulation, individually raised only a certain condition, status, or experience that would not itself be cause for disqualification. It was only through the trial court's embellishment that each of the defense-initiated questions in the present case

became valid, even necessary, in properly conducting Petitioner's pretrial *voir dire.*

This Court's decision in *Perry v. State,* 344 Md. 204, 686 A.2d 274 (1996), affirming the trial court's refusal to propound a defendant-requested *voir dire* inquiry concerning a specific potential status or experience of prospective jurors, is likewise instructive.[12] Following the precedent of *Davis,* the *Perry* court reasoned:

> A juror's having had prior experience as a juror, witness, victim or defendant in a criminal proceeding of any kind, or in one involving a crime of violence, is not *per se* disqualifying. It is even less tenable to argue that a juror is disqualified simply because of the experience of a member of the prospective juror's family or on the part of a close personal friend.

*Id.* at 218, 686 A.2d at 281 (citation omitted). The conclusion this Court reached in *Perry,* in light of our earlier decision in *Davis,* is entirely applicable to the instant case, once the appropriate substitutions are made:

> Consequently, Perry's contention really is addressed to whether the inquiries requested by him were "reasonably likely to reveal cause for disqualification," based upon partiality or bias. *Davis,* 333 Md. at 35, 633 A.2d at 871. Under the circumstances of the instant matter, there was not "a demonstrably strong correlation between the status in [Perry's expanded *voir dire* ] question and a mental state

---

**12.** The disputed *voir dire* issue in *Davis v. State,* 333 Md. 27, 633 A.2d 867 (1993), centered upon the trial court's refusal "to ask whether any of the jurors were, or were associated with, law enforcement personnel." *Id.* at 33, 633 A.2d at 870. On the other hand, the disputed *voir dire* question in *Perry v. State,* 344 Md. 204, 686 A.2d 274 (1996), was, "Has any member of the prospective jury panel or a member of your family or a close personal friend of yours ever had a prior experience as a juror, witness, victim or defendant in any criminal homicide or aggravated assault proceeding?" *Id.* at 218, 686 A.2d at 280. Perry maintained that the question should have been expanded to embrace any criminal proceeding, or, alternatively, that "any crime of violence" should have been substituted for "aggravated assault." *See id.* at 217–18, 686 A.2d at 280.

[of a venireperson] that gives rise to cause for disqualification." *Id.* at 37, 633 A.2d at 872.

344 Md. at 218–19, 686 A.2d at 281 (alterations in original). Although it mentions *Perry,* maj. op. at 13, the majority does not distinguish the case nor does it concede its departure from, if not rejection of, the case's holding and rationale.

It was only through the Circuit Court's addition of the suffix requested by the State that the subject matters of concern to Petitioner became material for purposes of *voir dire,* that is, directly relevant to a cause for disqualifying a member or members of the venire on the basis of a disabling impartiality. Without the trial court's apodosis, the protases posed by Petitioner, concerning potential conditions, statuses, or experiences of the prospective jurors, were little different from the defense-requested inquiries in *Davis* and *Perry* that this Court held properly were rejected on account of their failure to reveal or engender any cause for disqualification.

Furthermore, each of Petitioner's proffered *voir dire* questions also would suffer from the same flaw this Court found, *albeit* in a different context, with a question posed by the trial court in *Bowie v. State,* 324 Md. 1, 595 A.2d 448 (1991). In that case, Judge Bell, now Chief Judge of this Court, wrote for a unanimous Court:

> [T]he mere answer to the question does not provide the trial judge with any meaningful information concerning juror bias on which to act, nor does it conclusively establish juror disqualification; here, the question gives no clue and, hence, does not make apparent the nature of the jurors' apprehension or bias or indicate[ ] that automatic disqualification would be appropriate.

*Id.* at 23, 595 A.2d at 458–59. Those same words could be applied with equal force to the questions proposed by Petitioner.

Lastly, the majority offers no explanation for this Court's teaching that, as to pretrial *voir dire* questions or topics proposed by a party, "in the same manner as instructions to the jury under Md. Rule 4–325(c), the court need not ordinari-

ly grant a particular requested instruction if the matter is fairly covered by instructions actually given." *Burch v. State,* 346 Md. 253, 293, 696 A.2d 443, 463 (1997) (internal quotation marks omitted). I cannot fathom why or how the questions "actually given" by the trial court in the present case, which, again, merely embellished Petitioner's questions, failed to "fairly cover" the topics he sought to be investigated.

In sum, the rationale that this Court stated for our judgments in *Davis* and *Perry,* and that I find fully applicable to the present case, reconfirms the general rule underlying this Court's *voir dire* jurisprudence and governs what questions a trial court must ask of prospective jurors: If a question is reasonably related to the case at hand and would directly reveal a cause for disqualification, a party in a jury trial is entitled to have that question, in some appropriate form, propounded to the jury pool during *voir dire.* Conversely, if a question requested by a party does not enjoy such attributes, the trial court would not abuse its discretion in refusing to put that question to the venire.

Petitioner contends that the two-part questions posed by the trial judge prevented defense counsel from obtaining the information necessary to exercise his challenges for cause. Petitioner asserts, and the majority holds, that the inherent error in the trial court's chosen method for querying the venire about the subject matters requested by the defense in the present case lies in the supposed result that compound questioning allowed prospective jurors to be the final arbiter as to whether they were fit to serve. Self-assessment, contends Petitioner, to the apparent agreement of the majority, is simply impermissible in *voir dire:*

> [A] silent self-assessment, without disclosing the specifics of the prior experience, does not give counsel the information necessary for a challenge for cause nor does it give the trial judge a basis upon which to decide a challenge for cause, thus undermining the very purpose of *voir dire.* ... It is the trial judge who is invested with the discretion, and it is the trial judge who should consider all available evidence— the specifics of the answer, the demeanor of the person

while giving the answer, as well as the venire person's bottom line conclusion.

Brief of Petitioner at 17.

That simply is not so. The two-part questions posed in this case did *not* prevent defense counsel (or the prosecutor) from exercising challenges for cause. Whatever a prospective juror's response might have been to the first part of the question, had it been asked separately, there would have been no valid challenge for cause unless, in response to the second part, the juror stated that the experience or association inquired about in the first part would affect the juror's ability to be fair and impartial. For there to be a challenge for cause, the juror would have to answer *both* parts of the question in the affirmative. If the answer, even in the juror's mind, to either part, is in the negative, the juror would be qualified to sit and could not properly be excused for cause. The Court's holding in this case effectively transmutes the function of these questions into soliciting grounds for peremptory challenges—something we have steadfastly refused to do. If the Court wants to do that, the Court should say so and not muddle the difference between challenges for cause and peremptory challenges.

Additionally, Petitioner assails as short-sighted and overstated the rationale provided by the Court of Special Appeals in rejecting his assignment of error to the Circuit Court's use of compound questions. In its unreported opinion, the unanimous panel reasoned that "counsel always will be dependent on the jurors' own assessment of their ability to render a fair and impartial verdict." While this observation by the intermediate appellate court is perhaps too broad-sweeping, I nevertheless find myself in agreement with its essence.

The plain fact of any *voir dire* examination, insofar as the trial court does not engage in individualized interrogation of all or even just select members of the venire, is that both the trial court and the parties must at some point and to some extent rely upon the prospective jurors' veracity and sincerity, not only in confronting their own prejudices and biases, but in

admitting to them so as not to infect the impaneled jury with a partiality simply by serving, or even worse, by influencing the eventual verdict in a manner that would not have occurred but for such biases or prejudices. For instance, although it is incumbent upon the trial court to endeavor to ferret out any and all prospective jurors harboring racial prejudice and exclude them from the jury, "neither a specific form of question nor procedure is required." *Bowie*, 324 Md. at 13, 595 A.2d at 453–54. This is so because, regardless of the questions the trial court poses, at the end of the day, the question that remains is whether the prospective juror has "spoken the truth." *See* BLACK'S LAW DICTIONARY 1569 (7th ed.1999) (explaining the derivation of *"voir dire"* to be Law French for "to speak the truth"). The answer to that question ultimately resides with each prospective juror. Even an extremely biased member within the venire may avoid detection—and, thereby, disqualification—simply by refusing to disclose his or her bias or prejudice. It is for this reason that Petitioner would have us hearken to what he views as an inevitable conclusion, that the trial court must engage in examining prospective jurors individually. This is a conclusion that, as explained above, this Court has explicitly rejected.

> To be sure, to endorse
> a trial judge's propounding of a question designed to elicit from prospective jurors their bottom line conclusion as to their ability to serve *on a capital sentencing jury* . . . would be ratifying the trial court's shifting to the prospective jurors, themselves, the responsibility to make the ultimate decision as to their ability to serve *on a capital sentencing jury,* thus, allowing the court to avoid the exercise of discretion.

*Bowie*, 324 Md. at 23, 595 A.2d at 458–59 (emphases added). Nevertheless, this Court has also recognized that, "[i]n the *usual case,* questions designed to elicit bottom line juror conclusions are often used in the *voir dire* process and actions taken by the court in response are appropriately upheld." *Id.* at 24 n. 10, 595 A.2d at 459 n. 10 (emphasis added). *Cf. Ristaino*, 424 U.S. at 594–95, 96 S.Ct. 1017 (after noting

generally that the questions to be proposed during *voir dire* are largely discretionary with the trial court, the Court stated: "Thus, the State's obligation to the defendant to impanel an impartial jury generally can be satisfied by less than an inquiry into a specific prejudice feared by the defendant.").

I consider Petitioner's situation to fit within the "usual case" scenario. Whereas the topics of concern he identified for the trial court did not themselves directly give rise to cause for disqualification—as opposed to, for example, a racial prejudice admitted to by a prospective juror—and whereas the compound questions crafted by the court would (and did) reveal disqualifying bias(es) on the part of those venirepersons who responded affirmatively, I would conclude that the Circuit Court did not abuse its discretion by using two-part format inquiries, even to the extent they were "designed to elicit bottom line juror conclusions." *Bowie,* 324 Md. at 24 n. 10, 595 A.2d at 459 n. 10. The trial court should not be held to have committed reversible abuse of discretion in conducting *voir dire* simply because it added a clause to a defense-proposed question that reasonably sought to establish cause for disqualification.

A review of the entire record of the *voir dire* conducted in the present case will reveal that the trial judge acted diligently to exclude jurors incapable of being fair and impartial. The *voir dire* process was in no way perfunctory in nature. The court focused on discerning bias, not merely on qualifying jurors. *Cf. People v. Tyburski,* 445 Mich. 606, 518 N.W.2d 441, 451 (1994) (critically observing that the trial court's "manner of questioning appears to have been focused on qualifying jurors, rather than on discerning bias"). Moreover, the record reflects that many jurors responded affirmatively to the court's one-part and two-part questions. The court conducted follow up *voir dire* each time a prospective juror responded and ultimately excused twenty-two jurors for cause.

In his concurring opinion in *Davis,* Judge McAuliffe addressed the propriety of compound questions during jury *voir dire.* He recognized that compound questions have a legiti-

mate place and benefit to the court. *See Davis*, 333 Md. at 53, 633 A.2d at 880. He explained:

> In the instant case, ... the trial judge might well have asked the panel, in a single question, whether they or any members of their family had ever worked for a law enforcement agency, and as a result of that fact might find it difficult or impossible to render a fair and impartial verdict in the case about to be tried. *The benefit of a compound question in that instance is to focus the prospective juror's attention on a specific circumstance that experience has shown is sometimes a disqualifying factor for a juror*, without taking the time to hear from each juror about his or her uncle, aunt, or sister who was a police officer.

*Id.* at 54, 633 A.2d at 880 (McAuliffe, J., concurring) (emphasis added). While compound questions are in many circumstances acceptable, trial courts should not be "hamstringing themselves and counsel by allowing only compound questions." *Id.*, 633 A.2d at 880. Indeed, "[w]hat constitutes acceptable and unacceptable *voir dire* practice 'does not lend itself to hard and fast rules.'" *People v. Sawyer*, 215 Mich.App. 183, 545 N.W.2d 6, 9 (1996) (quoting *Tyburski*, 518 N.W.2d at 449). "[B]ecause it is impossible logically to frame a limitation on the questions that a judge would ... be required to ask," *Davis*, 333 Md. at 53, 633 A.2d at 880 (McAuliffe, J., concurring), it is left to the sound discretion of the trial court to propound reasonable questions in order to explore the existence of cause for disqualification and, to that end, to allow the judge to propose simple, sequential questions when appropriate, and, by the same token, compound ones as well.

Experience has shown that trial judges in this State are capable of exercising their discretion soundly so as to uncover biases within prospective jurors and seat a jury that is fair and impartial. Although the trial court could have posed the questions in the manner requested by Petitioner and to the members of the venire on an individual basis, I would hold that the court did not abuse its discretion in refusing to do so, nor does it warrant overturning Petitioner's convictions mere-

ly because the Circuit Court posed these same questions in a two-part format to the venire at large.

For all the reasons discussed above, I believe the trial judge in the present case conducted a fair, adequate, abuse-free, and error-free pretrial *voir dire* of the prospective jurors. I would therefore affirm the decision of the Court of Special Appeals, which in turn affirmed Petitioner's convictions.

Judges WILNER and HARRELL have authorized me to state that they join in the views expressed in this dissenting opinion.